### New Yorker Staats-Zeitung

*v.*

James Nolan, as mayor, &c.; of the township of North Bergen, Hudson county, et al.

[Decided September 26th, 1918.]

1. This court will, in a proper case, enjoin the officials of a township from enforcing a resolution passed by the township council forbidding the circulation of newspapers published in the German language.

2. Where the enforcement of the resolution would cause damage to the complainant, the amount of which it would be impossible to fix or even estimate, this court will not relegate the complainant to his action at law.

3. The passage of a resolution prohibiting the circulation of newspapers published in the German language, is not a proper exercise of the police power of a municipality.

4. The passage of such a resolution cannot be justified as a war measure, especially where the newspapers are published and distributed under a permit authorized by an act of congress.

On bill, &c.

*Mr. William E. Foster,* for the complainant.

*Mr. George E. Cutley,* for the respondents.

Lane, V. C. (orally).

The application is for an injunction to restrain the officials of the township of North Bergen from enforcing the provisions of a resolution passed by the township council forbidding the circulation of newspapers published by complainant in the German language.

The respondents insist, first, that this court has no jurisdiction; that the remedy of complainant is by *certiorari.*

The effect of the enforcement of the resolution would be to suppress the circulation of the newspapers in the locality and

will cause damage to complainant, the amount of which it will be impossible to fix or even estimate. The remedy at law for the damage done is clearly inadequate. Although the usual rule is that proceedings of municipal corporations should be reviewed by *certiorari,* this court has full and complete jurisdiction to prevent the municipality from acting under invalid proceedings where property rights will be destroyed and where the remedy at law for damages will be inadequate. In *McCormick* v. *New Brunswick,* *83 N. J. Eq. 1,* and *McKinley* v. *Freeholders of Union, 29 N. J. Eq. 164,* it was held that this court might intervene to prevent a municipality from disposing of public moneys under ordinances or resolutions where the effect of such disposal would be a fraudulent diversion of funds. So, in a very recent case, Vice-Chancellor Griffin enjoined the freeholders of Essex and of Hudson from interfering under resolution with the passage of the Lincoln highway by the Pennsylvania railroad.

My opinion is that the court has the same jurisdiction to interfere as it would have were the officials of the township acting in concert without a resolution having been passed, and in such an instance, I cannot conceive that there could be any question but that the court might act. The opinion of Mr. Justice Young, in the supreme court of New York, Westchester county, has been brought to my attention. Suffice it to say, that I disagree with it, as did Mr. Justice Donnelly in the case of *Star Company* v. *Brush et al.,* reported in the New York Law Journal of September 12th. Mr. Justice Giegerich succinctly, I think, stated the rule of law applicable in his opinion reported in the case of the *Star Company* v. *Brush, 170 N. Y. Supp. 987.*

Next, the respondents insist that the municipality had power to pass the resolution because of what is called its police power. It is said that the circulation of the newspapers in the German language may lead to riot in the township, and that for that reason the township may, to prevent riot, forbid their circulation. I think to state the proposition is almost to demonstrate its absurdity. If the township may prevent the circulation of a newspaper for no reason other than that some of its inhabitants may violently disagree with it, and resent its circulation by resorting to physical violence, there is no limit to what may be pro-

hibited. The residence in the township of a person obnoxious to the vast majority of its inhabitants may be prevented. The carrying on of a perfectly legitimate business may be prevented because to stop it inhabitants objecting to it may resort to violence.

The duty of the township officials is to suppress the disorder and to punish those who are guilty of the illegal act, not to prevent the performance of the legal act.

There can be no justification for the passage of the resolution as a war measure. That is a matter to be dealt with by the national authorities and not by the local authorities. In the instant case, the national authorities have granted a permit to complainant to publish its newspapers in the German language. The government might have, under recent legislation, suppressed the publication entirely. It might have granted a permit which would require the submission of the articles to be published to censorship. It might have, as it did, grant a permit to publish whatever the publishers thought proper without censorship. The papers published carry at their head the words "Published and distributed under Permit No. 7, authorized by the Act of October 6th, 1917, on file at the Post Office, New York, New York, by order of the President, A. S. Burleson, Postmaster-General." The government sends to the newspaper copy to be published. The government, undoubtedly, desires to reach a very large number of individuals of German extraction, who cannot understand English, through the medium of these newspapers so that they may be advised as to the purpose of this country in the present war, and so that they may be acquainted with the situation as it develops from day to day. There can be no question in my mind but that this is a wise thing to do. It is the only method of approach that can be at all efficacious. There are thousands of Germans in this country, many of them in North Bergen, who cannot understand English. Anything which will prevent the development of a national menace is justifiable. There is nothing more dangerous than a person left in ignorance of current events. We are confronted with a fact, not a theory. You cannot communicate with a person in a language he cannot understand.

The resolution in question, as appears from its context, was adopted at the request of the National Security League. That league seems to have taken direct issue with the administration as to the advisability of the circulation of any newspapers in the German language.

I am quite convinced that the reason actuating the passage of this resolution was not any real fear on the part of the municipal officers that there would be any disorder, but simply the request of the league, and a desire to go as far as they could in order to demonstrate their patriotism.

My view is that the resolution, far from being in line with the war purposes of the government, is directly opposed to them.

The restraint will be continued until final hearing.