77 N.J. Super. 587 (1963)
187 A.2d 217
FRANK C. MARINO AND ANGIE T. MARINO, HIS WIFE, AND FRANK MODAFFERI AND ETHEL MODAFFERI, HIS WIFE, PLAINTIFFS,
v.
HONORABLE MAYOR AND COUNCIL OF THE BOROUGH OF NORWOOD, AND ALOIS OAKES, BUILDING INSPECTOR OF THE BOROUGH OF NORWOOD, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 2, 1963.
*588 Mr. Herbert G. Draesel for the plaintiffs.
Mr. Karl Z. Sosland for the defendants (Mr. Robert D. Gruen, attorney).
G.H. BROWN, J.C.C. (temporarily assigned).
The parties to this action in lieu of prerogative writs have, by stipulation, recast the controversy so as to submit a narrow question of fact for determination.
At issue is the use status of premises known as 475 High Street in the Borough of Norwood, Bergen County. The property was restricted to one-family use by a zoning ordinance of that municipality enacted in 1948. Without dispute, the structure then was actually a two-family residence. It is acknowledged by the borough that the resultant nonconforming use could be continued thereafter because of the enabling effect of R.S. 40:55-48. But a building permit to renovate the structure has been denied for reason of an alleged abandonment of the nonconforming use.
*589 During the full period under review the interior physical layout of the two-story building has remained unchanged. On the first floor there have been a living room, a bedroom and a kitchen. A living room, two bedrooms and a kitchen have been located upstairs. A first-floor bathroom off a commonhall and not connected with either apartment has been available to both.
Testimony in the plaintiffs' case presented the history of use since 1945. In that year Pietro Gaggini, the owner, lived with his wife on the ground floor. His daughter, Mrs. Geonardi, occupied the second floor with her children. She paid rent. This family division of the two apartments continued for a number of years. It appears to have still been in effect during 1950, according to the testimony of Arthur P. Haviland, presently the borough mayor. In 1951 the Bartoli family became tenants in the first-floor apartment after the Gagginis moved upstairs with the Geonardis. The Bartolis were followed by Fletta Thompson, who took their first-floor apartment as a paying tenant in March 1952. In September there was a transfer by which Mr. Gaggini went to the first floor (his wife had died in November 1951) and Mrs. Thompson, with her sister, took occupancy above. This was the arrangement until 1954.
In 1954 Mrs. Thompson's sister left the premises. Mrs. Thompson remained alone on the second floor. Mr. Gaggini continued occupancy below. It is at this point in the chronology that the clear, two-family pattern was disturbed. Mrs. Thompson testified that the upstairs apartment was "not rented" from 1954 to 1957. It must be concluded, from the plaintiffs' proof, that although Mrs. Thompson continued to live in the second-floor apartment, there was no two-family use of the premises during this interval of time.
A paying tenant moved into the second floor in 1957. Mrs. Giordano with her children rented the apartment for $65 monthly. They were there for nine months. Mrs. Thompson was with Mr. Gaggini below during the day but she slept in an upstairs room at night. Mrs. Giordano's occupancy was *590 followed by the Darby tenancy on the second floor, with Mrs. Thompson still using one of the bedrooms at night. Tenants by the name of Van Hentenrich succeeded to the Darby use. They left in September 1960. No one lived on the second floor after that except Mrs. Darby, who had returned to the house to care for Mr. Gaggini in his illness. She used an upstairs room for sleeping. By this time Mrs. Thompson was living on the first floor with Mr. Gaggini. He died in June 1961.
The foregoing development of the facts emerged from the plaintiffs' case. No antagonistic evidence was adduced by the defendants. Mr. Alois Oakes, building inspector for the borough, testified that he had no knowledge concerning the use made of the premises since 1954.
The borough argues abandonment of the nonconforming use for two families. Its contention is not derived from treating as crucial the hiatus between 1954 and 1957 when the second-floor apartment was unrented. Nor is abandonment claimed because there was no further rental of the upstairs rooms after September 1960. Such argument would be met with well established authority draining significance out of inactive user, per se. Thus, in State v. Accera, 36 N.J. Super. 420 (App. Div. 1955), a broad review of case law was summed up:
"Turning then to the inquiry stated, we find it to be settled that a nonconforming use may be continued under certain circumstances even though the use has not been exercised for a substantial period of time. The cases draw their authority from the statute." (at p. 424)
A discontinuance, without more, has so far not invalidated a nonconforming use. For abandonment there must be something added to inaction. Professor Cunningham, in his comprehensive survey entitled "Control of Land Use in New Jersey," 14 Rutgers L. Rev. 37 (1959) said:
"The key to the abandonment concept seems to be `intent to abandon' expressed or reasonably to be inferred from the circumstances * * *." (at p. 70)
*591 It is the borough's position that the intent to abandon a two-family use was spelled out by clear conduct because the house was devoted to three-family occupancy during the Giordano tenancy in 1957. A nonconforming use may not be extended. This principle is thoroughly founded in decisions cited in the defendants' brief. If the High Street dwelling was in fact used for housing three families during nine months in 1957, this enlargement of the nonconforming use would be fatal to its continuance as the defendants correctly insist.
Frank C. Marino, one of the plaintiffs, testified that there were three families in occupancy when Mr. Gaggini, Mrs. Thompson and Mrs. Giordano were in the house together. This conclusion is not probative of the fact. Mr. Marino's knowledge of the domestic circumstances was so meager as to be worthless to a factfinder. What the defendants term to be "the critical issue in this case" should turn on something more concrete than his gratuitous surmise, even though it is in the format of an admission against interest.
When Mrs. Thompson's standing in the two-family context has been adjudicated, the controversy will be laid to rest as the defendants have shaped the case. The answer depends upon the facts and their reasonable implications.
There is no contradiction of her testimony that she entered the dwelling initially as a tenant paying rent. Apparently this status was unaltered until 1954. Her use of the separate accommodations, whether alone or with her sister during these years, was a "family" use. The defendants do not assert contradictory facts. They accept the conclusion as a premise for the argument in their brief that she "must [therefore] be treated as a `family' for all purposes during the entire interval that she lived in the house." By this reasoning the defendants precipitate the "triple occupancy" in 1957.
The Thompson presence in the premises underwent a transformation in the years immediately before 1957. She had known Mr. Gaggini since 1944. Until 1952 she visited the house occasionally. Then she became a rental tenant. By *592 1954 she was no longer paying rent, but she said she was paying some of Mr. Gaggini's bills. When he became sick she managed his affairs for two years. Presumably she was of substantial assistance to him in his illness. Her community of interest with him induced Mrs. Giordano in 1957 to believe she was his wife. The closeness of the Thompson-Gaggini relationship is amply implied by the fact that he devised the property to her.
By the time Mrs. Giordano became a tenant, Mrs. Thompson appears to have become a part of the Gaggini household. Should she be treated as having become a member of his "family"? The ordinance in terms makes this result impossible. A "family" is therein defined as being
"Any number of individuals related by blood or marriage, and including servants, living together as a single housekeeping unit." (section III)
I find as a fact that in 1957 Mrs. Thompson and Mr. Gaggini were living together as a single housekeeping unit. But there is no evidence even to suggest that they were related by blood or were married to each other. Is the absence of consanguinity or affinity fatal to a joint occupancy of the first floor apartment as a valid one-family residential use?
"Where an act passed by the legislature embodies a definition, it is binding on the courts." 50 Am. Jur., Statutes, sec. 262, p. 254
By reason of this maxim, the thorough integration of unrelated persons into a single housekeeping unit could never constitute a "family" in any Norwood residence.
The few reported decisions defining a "family" within the meaning of zoning regulations have been collected in 172 A.L.R. 1172 (1948). In none of these cases, nor in those supplementing the annotation, has there been an adjudication of the question whether or not a zoning ordinance may constitutionally deny to persons who live together as a single housekeeping unit the continuing right to do so simply because *593 one or more of them is unrelated to the others by blood or marriage. Courts have handled a more limited issue. They have said that use of a structure does not contravene a one-family restriction even where the occupants are numerous, so long as they are integrated for housekeeping purposes. But these were instances where the zoning ordinance by definition made that requirement alone the test. Thus, in Application of La Porte, 2 A.D.2d 710, 152 N.Y.S.2d 916 (1956), affirmed 2 N.Y.2d 921, 161 N.Y.S.2d 886, 141 N.E.2d 917 (1957), the proposed use of a building by about 60 students was deemed to be a one-family use within the ordinance, because of housekeeping unity. Similar results were reached in Missionaries, etc. v. Village of Whitefish Bay, 276 Wis. 609, 66 N.W.2d 627 (1954) (several priests and lay brothers of a religious order), and Robertson v. Western Baptist Hospital, 267 S.W.2d 395 (Ky. Ct. App. 1954) (20 nurses with a housekeeper).
In only two decisions found by the court has there been an intimation that affinity or consanguinity could be made a valid requisite. In La Porte, supra, the court said:
"The city's legislative body has the right to define the term `family.' It has done so, placing no limitation on the number of persons constituting a family, nor does it require that the members thereof be related by blood or marriage." (at p. 918)
In the Missionaries opinion, supra, the court took a stronger position on the academic question:
"Had it been the pleasure of the legislative body when defining the word `family,' to have excluded in the district any dwelling use of premises there situated, by a group of individuals not related to one another by blood or marriage, it might have done so." (at p. 630)
The court went on to say more, however, which somewhat adulterated the force of this dictum:
"It is to be noted that aside from the definition of the term `family' in the ordinance, the ordinary concept of that term does not necessarily imply only a group bound by ties of relationship." (at p. 630)
*594 Difficult fact situations were presented in the foregoing cases. The housekeeping uses were ancillary to institutional activities. In the present case the issue arises in a conventional setting. No more is involved here than a strictly domestic occupancy.
Until compelled to do so by a New Jersey precedent squarely in point, this court will not conclude that persons who have economic or other personal reasons for living together as a bona fide single housekeeping unit and who have no other orientation, commit a zoning violation, with possible penal consequences, just because they are not related. The defendants do not explicitly invoke the technical effect of the "family" definition. To the extent, however, that it is nevertheless a factor in the case, I find for the plaintiffs notwithstanding.
A building permit for renovation of the structure as a two-family residence should therefore be issued without costs of suit.