(No. 39368.—

THE CITY OF DES PLAINES, Appellee, *vs.* MARY ELLEN TROTTNER *et al.,* Appellants.

*Opinion filed March 24, 1966.—Rehearing denied May 18, 1966.*

MARY ELLEN TROTTNER, *pro se,* (MARY V. NEFF, of Chicago, of counsel,) for appellants.

ROBERT J. DI LEONARDI, of Des Plaines, for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The City of Des Plaines brought this action to enforce the provisions of its zoning ordinance. The defendants are Mary Ellen Trottner, the owner of a one-story single-family residence located in the single-family residence district as

defined in the ordinance, and four young men, not related to one another, who occupy the residence as her tenants. The complaint alleged that this use of the property violated the ordinance, since the occupants did not constitute a "family" as defined in the ordinance. One count of the complaint prayed for injunctive relief to enforce the ordinance, and requested the allowance of statutory attorney's fees. (Ill. Rev. Stat. 1963, chap. 24, pars. 11—13—15.) The other count sought to recover fines from the defendants for violation of the ordinance.

The defendants moved to dismiss the complaint on the ground that their use of the property did not violate the ordinance, and that if the ordinance was construed to prohibit that use of the property, it exceeded the statutory authority of the city and violated the constitutions of the State of Illinois and of the United States. The motion to dismiss was overruled, and when the defendants elected to stand by their motion a decree was entered which granted the injunctive relief sought in the complaint, fined the defendants $100, and awarded the plaintiff the sum of $741.40 "as and for attorneys fees and court costs."

The defendants have appealed directly to this court. The trial court reached and resolved the constitutional issue raised by the defendants. While the case itself involves a single parcel of property, the constitutional question that it presents is a novel one, and the validity of the classification which the defendants attack is a matter of broad concern throughout the State. This court therefore has jurisdiction upon direct appeal. *Cf. First National Bank & Trust Co.* v. *City of Evanston,* 30 Ill.2d 479.

The dispute centers about the provision of the ordinance which defines the word "family" as follows: "A 'family' consists of one or more persons each related to the other by blood (or adoption or marriage), together with such relatives' respective spouses, who are living together in a single dwelling and maintaining a common household. A

'family' includes any domestic servants and not more than one gratuitous guest residing with said 'family'." Under the ordinance, convents and monasteries, and rectories and parish houses are permitted in the single-family residence district.

The first contentions that the defendants advance involve the construction of the ordinance. They argue that the word "adoption" as used in the definition of "family" is not restricted to legal adoption, but should be interpreted as meaning "to take by choice into a relationship as child, heir, friend, citizen, *etc.*" Upon this interpretation it is urged that the defendants have adopted one another "as friends and members of a common household unit." But we think that in the context of the definition contained in the ordinance, with its emphasis upon relationship by blood or marriage, the word "adoption" can not fairly be read to contemplate anything other than legal adoption. The defendants also point out that their occupancy of the premises does not fall within the ordinance definitions of a lodging or rooming house, because each of the four tenants has signed a lease under which he has become liable for a year's rental for the entire residence, and each has undertaken to heat the premises. But even if the defendants' occupancy is not to be characterized as a lodging or rooming house, it does not follow that they must be regarded as a single family, under the provisions of the ordinance.

The defendants next argue that the General Assembly has not delegated to the city the "authority to segregate people into zoning districts in accordance with whether they are married or unmarried, or are blood relatives or are an only child without relatives, or are financially able to support gratuitous guests or to employ domestic servants." The General Assembly has authorized municipalities "(4) to classify, regulate and restrict the location of trades and industries and the location of buildings designed for specified industrial, business, residential, and other uses; (5) to

divide the entire municipality into districts of such number, shape, area, and of such different classes (according to use of land and buildings, height and bulk of buildings, intensity of the use of lot area, area of open spaces, or other classification) as may be deemed best suited to carry out the purposes" of the zoning provisions of the Municipal Code, and "(7) to prohibit uses, buildings, or structures incompatible with the character of such districts." Ill. Rev. Stat. 1965, chap. 24, par. 11—13—1.

The statutory authority of the city to provide for a single-family use district as a "specified  *  *  *  residential" use classification seems clear enough, but it is also clear that the General Assembly has not, in terms, authorized a classification based upon relationship by blood or marriage, and the question that remains is the constitutional validity of the classification that the city has adopted. The considerations that the defendants advance to show that the ordinance classification is unreasonable, and so violates the due process and equal protection provisions of the constitution of the United States and the due process clause of the constitution of Illinois, are relevant in determining whether the legislature has authorized such a classification. The defendants point out that if the four tenants in this case were cousins, no matter how distant, or if two of them were servants and one was a gratuitous guest, the same four individuals could live in the same home in an identical manner. School teachers who might choose to live together are prohibited by the ordinance from doing so, and a widow whose grown-up children have established homes of their own can not take in a friend who would share the expenses of the establishment, but must live alone unless she is financially able to support someone else or to hire a servant. A family living in a single-family residence district can not take in a foreign exchange student who pays something for his room, nor could they take into their home a foster child under the provisions of the Child Care Act. (Ill. Rev. Stat.

1965, chap. 23, par. 2310). And the ordinance permits rectories, parish houses, convents and monasteries in the single-family zone, and thus contemplates in some instances, the use of residences in that zone by unrelated persons who live together as a common household.

While single-family residence zoning is a familiar, perhaps universal, characteristic of zoning ordinances, the questions relating to precise definitions of the term "family" have not arisen frequently. Our own decisions have not involved such questions. The ordinance before the court in *Harmon* v. *City of Peoria,* 373 Ill. 594, defined "family" as "one or more persons occupying a premises and living as a single housekeeping unit as distinguished from a group occupying a boarding house, lodging house, or hotel." And in *Anderman* v. *City of Chicago,* 379 Ill. 236, the ordinance defined "family" as "One or more individuals living, sleeping, cooking and eating on the premises as a single housekeeping unit."

When other courts have been called upon to define the term "family" they have emphasized the single housekeeping unit aspect of the term, rather than the relationship of the occupants. In *Boston-Edison Protective Association* · v. *Paulist Fathers,* (1943) 306 Mich. 253, 10 N.W.2d 847, five priests and their two servants occupied a building which was subject to a restrictive covenant to the effect that the property would not be used "except for a single dwelling house and dwelling house purposes only." The court rejected as unreasonable the contention that the restriction limited the occupancy of the property to persons related to one another by blood or marriage, and distinguished cases involving boarding and rooming houses and fraternity houses. And in *Brady* v. *Superior Court* (1962) 19 Cal. Rptr. 242, the District Court of Appeal was called upon to determine the meaning of "single family dwelling" in an ordinance which did not define the phrase. The court held that the term did not require consanguinity and affinity of the members of the

household but that "to qualify as a 'single family dwelling' an erected structure need only be used as a single housekeeping unit." 19 Cal. Rptr. at 250.

We have been referred to only one decision which involved the validity of an ordinance that defined a family, for zoning purposes, in terms of a relationship by blood, marriage or adoption. In *City of Newark* v. *Johnson,* 175 A. 2d 500 (N.J. 1961), the Essex County Court sustained convictions of defendants who had violated such an ordinance by permitting children who were not related to them but who were wards of the State to live in their homes in a single family district. The court held that the ordinance was reasonably related to public health, safety, morals, convenience, or welfare, saying, "* * * the family status, as defined and restricted by said ordinance, does have a bearing toward preventing over-crowding of a one-family building. Without its restriction it could open the door to increasing the occupants to the extent of the increased number of the additional foster children taken in and increasing the number of additional children in the neighborhood. Also to be considered is that the greater number of children in the area may also affect real estate values in the locality." (175 A. 2d at 503.) We do not regard the considerations thus advanced as particularly persuasive.

In terms of permissible zoning objectives, a group of persons bound together only by their common desire to operate a single housekeeping unit, might be thought to have a transient quality that would affect adversely the stability of the neighborhood, and so depreciate the value of other property. An ordinance requiring relationship by blood, marriage or adoption could be regarded as tending to limit the intensity of land use. And it might be considered that a group of unrelated persons would be more likely to generate traffic and parking problems than would an equal number of related persons.

But none of these observations reflects a universal truth.

Family groups are mobile today, and not all family units are internally stable and well-disciplined. Family groups with two or more cars are not unfamiliar. And so far as intensity of use is concerned, the definition in the present ordinance, with its reference to the "respective spouses" of persons related by blood, marriage or adoption, can hardly be regarded as an effective control upon the size of family units.

The General Assembly has not specifically authorized the adoption of zoning ordinances that penetrate so deeply as this one does into the internal composition of a single housekeeping unit. Until it has done so, we are of the opinion that we should not read the general authority that it has delegated to extend so far. Such a reading would generate constitutional questions of the kind suggested by the defendants, concerning which we express no opinion.

The decree of the circuit court of Cook County is reversed.

*Decree reversed.*