112 N.J. Super. 341 (1970)
271 A.2d 430
GABE COLLINS REALTY, INC., A NEW JERSEY CORPORATION, FOURTH WARD PROPERTY OWNERS ASSOCIATION, INC., A NEW JERSEY CORPORATION, MARIE BIGGS, HARRY BIGGS, RICHARD NUGENT, DORIS NUGENT, DONNA CATRAMBONE, ANTHONY R. CATRAMBONE, HARRY BURKHARDT, BARBARA BURKHARDT, PATRICK TRICOCCI, EDWARD HARROLD, STEPHEN JACOBS, PLAINTIFFS-APPELLANTS,
v.
CITY OF MARGATE CITY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS, AND MARGATE CIVIC ASSOCIATION, INTERVENOR-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 5, 1970.
Decided November 20, 1970.
*342 Before Judges CONFORD, KOLOVSKY and CARTON.
Mr. John W. Gilbert argued the cause for appellants.
Mr. Enoch A. Higbee, Jr. argued the cause for respondents.
The opinion of the court was delivered by CONFORD, P.J.A.D.
Plaintiffs, who are for the most part owners of two-family houses ("duplexes") held for summer rental, challenge the validity of a zoning ordinance of Margate City, an oceanside community in Atlantic County. Under attack is the provision of the ordinance which defines "family," for purposes of the use restriction of certain zones to "single family dwellings" and to "two family houses," among other uses, as follows:
* * * one or more persons related by blood, marriage or adoption or not more than two unrelated persons occupying a dwelling unit as a single non-profit housekeeping unit.
The foregoing definition is contained in a revised zoning ordinance adopted in October 1967, and it was legislated for the purpose of eliminating what the governing body considered undesirable conditions, hereinafter described, attending the summer rental of dwelling units to substantial *343 groups of unrelated young men or young women. Plaintiffs contend that this limitation on the use of their property is an arbitrary and unwarranted encroachment on the use of private property. The Law Division judge, after a hearing at which testimony was taken, concluded that plaintiffs had failed to carry their burden of overcoming the presumption that the provision was valid and free from arbitrariness or unreasonableness.
Plaintiffs had tendered a subordinate contention that the municipal authorities were enforcing the ordinance in a discriminatory and oppressive manner. We do not reach this issue, which the trial court resolved in favor of defendant, as we have concluded that, as written, the provision impugned is void as an arbitrary and unreasonable restriction upon plaintiffs' right to use or rent their properties, contrary to the constitutional requirements of substantive due process. As further indicated in the course of this opinion, however, we do not entertain the view that the municipality is necessarily without legislative power to control the problem with which it has been concerned by a proper exercise of the zoning authority in relation to occupancy of dwelling units.
Defendant offered proofs at the trial that "group rentals," as tenancies of groups of unrelated persons are commonly denominated in the area affected, are frequently attended by "noise and disturbance." The renters are usually in the 20-30 age range and unmarried. The testimony of the mayor was: "We got phone calls from neighbors who can't sleep, who can't enjoy their homes." The police respond and "pick up any large numbers that were making the disturbance." Moreover, substandard structural and sanitary conditions were found in some cases, allegedly attributable to absentee ownership and irresponsibility of the renters, with premises littered with empty beer and liquor bottles and dirt and debris.
Plaintiffs emphasize that under the terms of the definition of "family" in the ordinance, even occupancy of dwelling *344 units by unrelated owners themselves is proscribed; for example, three schoolteachers, or close friends, or other small groups of unrelated persons nevertheless constituting a regular housekeeping unit and having common interests. They contend that, in principle, the unreasonableness of the foregoing restrictions under the ordinance extends to occupancy of dwelling units by such innocuous groups in possession as tenants, whether on an all-year basis or for the summer months. As owners, they contend that their property rights are unreasonably curtailed in their being deprived of the opportunity to rent to groups unreasonably restricted by the tests of relationship or numerical limitation to two persons. They argue that such criteria unwarrantably impair the normally expectable economic return from the properties which are functionally appropriate to occupancy by more than two persons. The proofs indicate, however, that such units as are held by plaintiffs are generally rented to groups of six to eight persons. The record is devoid of information as to the number of rooms contained in such units and as to the extent of the kitchen (if any) and sanitary facilities made available to groups of that size.
The economic stake of the plaintiffs in freedom from the restriction of the ordinance is that, by and large, greater rentals can be realized from groups than from normal families usually having only one wage-earning head.
Case authority directly or tangentially bearing upon the constitutional validity of ordinances restricting occupancy of conventional dwelling units to groups related by blood, marriage or adoption is fairly sparse. In this State we may consult Larson v. Mayor, etc., Spring Lake Heights, 99 N.J. Super. 365 (Law Div. 1968); Marino v. Mayor, etc. Norwood, 77 N.J. Super. 587 (Law Div. 1963); and Newark v. Johnson, 70 N.J. Super. 381 (Cty. Ct. 1961). The latter two cases involved zoning ordinances. Larson was concerned with two ordinances, of similar purport, adopted under the general welfare police powers of municipalities granted by N.J.S.A. 40:48-1(6) and 40:48-2, but designed *345 to meet problems arising from summer group rentals in shore resort communities of substantially the same nature (with some exacerbation) as the problems presented to the Margate City authorities.
In Johnson, supra, the court held valid a restriction of one-family dwellings to persons related by blood, marriage or adoption maintaining a common household, as applied against families harboring foster children. The regulation was upheld as designed to prevent excessive numbers of children in the neighborhood and to preserve property values. In Marino, supra, a substantially similar restriction was held unreasonable as construed, in relation to the joint residence in a common housekeeping unit of an unrelated elderly couple, to constitute them two "families" and thereby to cause the two-family dwelling which they shared with another family to violate the zoning restriction limiting the use of the building to two families.
In Larson, supra, the decision of closest pertinence to the present case, the regulatory ordinances involved prohibited, in effect, the use or occupancy of houses or dwellings by, inter alia, groups of persons not qualifying as a "family" as defined in the ordinances. A family was defined as:
A collective group of persons related by kinship, adoption, blood or marriage, living together under the same roof, in a common household whose relationship is of a permanent and distinct domestic character and not resort or seasonal in character or nature, including any domestic servants, lodgers, boarders or guests. [99 N.J. Super., at 370]
It is noticeable that these ordinances are more restrictive than the Margate City ordinance in not allowing any non-related group whatsoever, nor even a related group if living together only for the summer, whereas Margate City allows an unrelated group of not in excess of two persons. Judge Simmill found that while the evident problems associated with group rentals were fit subjects for police power regulation, these particular ordinances were unreasonable in *346 that they went "beyond the public need," constituted "an excessive restriction" on the use of private property, and were "palpably excessive as a `requirement necessary to minimize the offensive character of the conduct to be regulated,'" citing principles enunciated in Katobimar Realty Co. v. Webster, 20 N.J. 114 (1955) (a zoning case), and State v. Mundet Cork Corp., 8 N.J. 359 (1952), cert. den. 344 U.S. 819, 73 S.Ct. 14, 97 L.Ed. 637 (1952) (regulatory ordinance), among other decisions. The court pointed out, as one of several examples of the arbitrary character of the restriction, that under the ordinance it would be unlawful for two friends to share a house or apartment, even if their relationship were of a permanent and domestic character (99 N.J. Super., at 375). The court concluded that the municipalities should not "burn the house to roast the pig" (at 374).
However, defendant emphasizes that in Larson the court observed that its determination involved "no opinion as to the validity of a properly enacted zoning ordinance which might deal with the subject in similar fashion to the ordinances in question" (at 376; emphasis ours), noting that a restriction to single-family use has been upheld, as in Collins v. Board of Adjustment, Margate City, 3 N.J. 200 (1949), and Guaclides v. Englewood Cliffs, 11 N.J. Super. 405 (App. Div. 1951). But we do not believe that the court meant to imply, nor would we agree, that arbitrary or patently unreasonable restrictions on the use of property, subject to condemnation when adopted as police-power regulations, would necessarily survive judicial scrutiny merely because dressed in the garment of a zoning ordinance. Zoning is simply one broad segment of the police power, exerted for the public welfare. Schmidt v. Board of Adjustment, Newark, 9 N.J. 405, 414 (1954). All police power legislation, including zoning, is subject to the constitutional limitation that it be "reasonably exercised," i.e., conditioned by the demands of due process  that the regulation "not be unreasonable, arbitrary, or capricious, and that the means *347 selected shall have a real and substantial relation to the object sought to be attained." Ibid.
While some types of inimical conduct may be related to land use, so as to suggest the possible appropriateness of municipal regulation by either the zoning or the general police power authority, see Fred v. Mayor, etc. Old Tappan, 10 N.J. 515, 521-522 (1952); Kligman v. Lautman, 98 N.J. Super. 344, 356-357 (App. Div. 1967), aff'd 53 N.J. 517 (1969); cf. Andover Tp. v. Lake, 89 N.J. Super. 313 (App. Div. 1965), it would seem that, given arbitrariness or unreasonableness in classification or in impairment of property rights sufficient to nullify a regulation under the one genus of legislative authorization, it should also ordinarily fall if adopted under the other.
In Illinois the Supreme Court recently held an ordinance restricting one-family use to such groups as were related to each other by blood, marriage or adoption (plus servants and one guest) to have been beyond the legislative delegation of the zoning power. City of Des Plaines v. Trottner, 34 Ill.2d 432, 216 N.E.2d 116 (Sup. Ct. 1966). The ordinance was sought to be enforced against the rental of a single-family residence to four young men, not related. Although the attack on the ordinance was based on due process and equal protection grounds, the court chose to rest its determination on lack of legislative authority. But its reasoning emphasized considerations of unreasonableness of classification. In an expression basically pertinent, as well, to the instant ordinance, the court said:
The considerations that the defendants advance to show that the ordinance classification is unreasonable, and so violates the due process and equal protection provisions of the constitution of the United States * * *, are relevant in determining whether the legislature has authorized such a classification. The defendants point out that if the four tenants in this case were cousins, no matter how distant, or if two of them were servants and one was a gratuitous guest, the same four individuals could live in the same home in an identical manner. School teachers who might choose to live together are prohibited by the ordinance from doing so, and a widow whose grown-up children have established homes of their own can not *348 take in a friend who would share the expenses of the establishment, but must live alone unless she is financially able to support someone else or to hire a servant. A family living in a single-family residence district can not take in a foreign exchange student who pays something for his room, nor could they take into their home a foster child under the provisions of the Child Care Act. [216 N.E.2d at 118]
The court discussed Newark v. Johnson, supra, but found that the considerations advanced by the County Court therein in support of a similar zoning classification were not "particularly persuasive." (216 N.E.2d at 119).
In Kellog v. Joint Council of Women's Auxiliaries W. Ass'n, 265 S.W.2d 374 (Mo. Sup. Ct. 1954), the court dealt with a St. Louis zoning ordinance defining "family," for purposes of restriction of a zone to single-family dwellings, as a group immediately related by blood, marriage or adoption living together as a single housekeeping unit, but inclusive also of a group of not more than five persons not necessarily related but living together as a single housekeeping unit. The ordinance was sustained as valid against a challenge by defendant which maintained a building in the zone affected housing 21 elderly or convalescent women. The court observed that the municipality might under the zoning function properly legislate against "too intensive use of parcels of land" (at 378). However, the court also stressed the "multiple occupancy" of defendant's property in an area zoned for single families. Ibid. Thus, the decision is construable as upholding the ordinance in its application to prohibit the particular defendant's use and not necessarily generally, as in application to a less "multiple" use.
There is a plethora of decisions construing the term "family," as in "one-family" or two-family," when used in zoning ordinances without more particular definition of the term, but we are cited to none in which the constitutionality of a construction thereof as requiring relationship by blood or marriage of the group is considered to any degree. See Annotation 172 A.L.R. 1172. For an offhand dictum affirming the power, see Missionaries of Our Lady of La *349 Salette v. Village of Whitefish Bay, 267 Wis. 609, 66 N.W. 2d 627, 630 (Sup. Ct. 1954); cf. Application of Laporte, 2 A.D.2d 710, 152 N.Y.S.2d 916, 918 (App. Div. 1956), aff'd 2 N.Y.2d 921, 161 N.Y.S.2d 886, 141 N.E.2d 917 (Ct. App. 1957). An interesting exposition of the proposition that the term "family" in a zoning ordinance does not necessarily mean a related group may be found in Brady v. Superior Court, 200 Cal. App.2d 69, 19 Cal. Rptr. 242 (D. Ct. App. 1962).
Upon a consideration of all of the foregoing, it is our judgment that a general municipal restriction of occupancy of dwelling units to groups of persons all of whom are related to each other by blood, marriage or adoption is unreasonably restrictive of the ordinary and natural utility of such property as dwellings for people, and of the right of unrelated people in reasonable number to have recourse to common housekeeping facilities in circumstances free of detriment to the general health, safety and welfare. We are in agreement with much of what was said in Larson v. Mayor, etc., Spring Lake Heights, supra, which is in harmony with these conclusions. Moreover, there is, in our view, no significant amelioration of such unreasonableness in allowing occupancy by two unrelated people. Dwelling units of a size adequate to accommodate a normal family are reasonably susceptible of occupancy by more than two unrelated persons without such accompanying threat to the public welfare, in any of its many aspects, including zoning, as warrants a restriction of occupancy to so few a number. Thus, even in the light of the legitimate concern of the municipality with the undesirable concomitants of group rentals experienced in Margate City, and of the presumption of validity of municipal ordinances, we are satisfied that the remedy here adopted constitutes a sweepingly excessive restriction of property rights as against the problem sought to be dealt with, and in legal contemplation deprives plaintiffs of their property without due process. As presently written, the ordinance may not be enforced against them.
*350 Although the foregoing suffices to dispose of the particular matter before us, we deem it appropriate to express our view that the municipality is not necessarily without power to control the evils apparently emanating in recent years from rentals to unrelated groups in resort communities. We are not holding, for example, that an ordinance may not limit a group of unrelated renters or owners to a reasonable number in a single dwelling unit (but there may well be a difference as between renters and owners). Resolution of the question of validity in such case would depend upon whether the numerical limitation chosen was a fair accommodation of the legitimate municipal interest in freedom from the neighborhood harms assertedly accompanying occupancy of dwelling units by substantial numbers of unrelated persons with the rights of unrelated persons in general to occupancy of such a unit in a group of moderate number comprising a single housekeeping unit. It is, of course, not our function to write such a proviso for the municipality in advance.
It would seem, moreover, that the criterion that the occupying group constitute a bona fide single housekeeping unit is a reasonable zoning prerequisite in areas restricted to one-and two-family occupancy and that enforcement thereof might in and of itself validly and effectively curtail occupancy by those unrelated groups whose use is essentially of a dormitory or rooming house character rather than as true housekeeping units.
The judgment is reversed and the cause remanded to the Law Division for entry of an order declaring the ordinance provision here involved invalid and restraining its enforcement. No costs.

SUPPLEMENTAL OPINION (filed December 1, 1970)
PER CURIAM.
Since the filing of our opinion in this matter November 20, 1970, our attention has been called to Kirsch Holding Co. v. Manasquan, 111 N.J. Super. 359 (Law Div. 1970), holding valid a zoning ordinance which *351 defines "family," inter alia, as including "a collective number of persons living together in one house, whose relationship is of a permanent and distinct domestic character, and cooking as a single housekeeping unit," but not if their "association is temporary and resort-seasonal in character or nature."
To the extent that Kirsch holds or implies that arbitrariness or unreasonableness of classification which would invalidate an ordinance adopted under the general police powers of municipalities, see Larson v. Mayor, etc., Spring Lake Heights, 99 N.J. Super. 365 (Law Div. 1968) (by the same court which decided Kirsch), is saved from condemnation by mere reason of the incorporation of the same classification into a zoning ordinance, we disagree, for the reasons stated in our opinion on that point. However, the ordinance involved in Kirsch is less restrictive than that dealt with in Larson. The latter forbade occupancy by a group of "unmarried" persons under any circumstances. That in Kirsch allows unrelated persons provided their association is "permanent," etc. and not "resort-seasonal" in nature. The case before us does not involve qualifications of that nature on the right of unrelated persons to rent or occupy, and we do not undertake to pass upon them or imply any opinion in relation thereto.