131 N.J. Super. 29 (1974)
328 A.2d 242
TOWNSHIP OF EWING AND RICHARD WEASNER, PLAINTIFF-RESPONDENT,
v.
THOMAS M. KING AND DONALD FORT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 21, 1974.
Decided November 1, 1974.
*30 Before Judges LEONARD, SEIDMAN and BISCHOFF.
Messrs. Scott and Fox, attorneys for appellant.
Messrs. Dietrich, Allen & St. John, attorneys for respondent.
The opinion of the court was delivered by BISCHOFF, J.A.D.
Defendant Thomas M. King, having been convicted in the municipal court of a violation of a zoning ordinance and fined $200, appealed to the County Court. After a trial de novo on the record, R. 3:23-8(a), defendant was again convicted. This further appeal followed.
Defendant and his father are the owners of a dwelling in the Township of Ewing near Trenton State College. The property was leased to Donald Fort for the 1971-72 school year and, in turn, occupied by eight female college students. Defendant was charged in the complaint with "renting illegally converted one-family residence to eight college students * * *." The complaint was based on an alleged violation of the Ewing Township Zoning Code, Art. T, § II, which contains provisions respecting student rooming houses. We are, however, concerned only with paragraph 1 thereof which provides, "No more than four (4) students will be roomed in any one house."
*31 The facts were stipulated at the trial. The sole defense interposed was the contention that the ordinance was unconstitutional. Defendant submitted no evidence in support of that contention and proceeds on the theory that the ordinance is per se invalid, and he basically relies on the cases of Gabe Collins Realty, Inc. v. Margate, 112 N.J. Super. 341 (App. Div. 1970), and Kirsch Holding Co. v. Manasquan, 59 N.J. 241 (1971), as support for that contention.
The narrow issue thus presented is whether a zoning ordinance may properly limit the number of students rooming in a one-family dwelling to four.
Zoning ordinances are to be liberally construed in favor of the municipality and to be given a reasonable construction and application. Place v. Saddle River Bd. of Adj., 42 N.J. 324, 328 (1964); J.D. Const. v. Freehold Tp. Bd. of Adj., 119 N.J. Super. 140, at 145.
We are instructed that:
Judicial review of a zoning ordinance duly adopted by a municipality is confined to a narrow sphere. There is a presumption in favor of the validity of the ordinance which can only be overcome by an affirmative showing that the ordinance is arbitrary or unreasonable. (citation omitted). "By these standards which control judicial review, the plaintiff to prevail must show beyond debate that the township in adopting the challenged amendment transgressed the standards of R.S. 40:55-32." [Morris v. Postma, 41 N.J. 354, 359-360 (1964)]
Defendant concedes that a municipality may act by zoning to prevent overcrowding, but would confine the exercise of such power to a specific use ratio formula such as that suggested in Kirsch Holding Co. v. Manasquan, supra, "limiting the number of occupants in reasonable relation to available sleeping and bathroom facilities or requiring a minimum amount of habitable floor area per occupant." Id., 59 N.J. at 254, and contends that the blanket prohibition against no more than four students in a one-family dwelling regardless of the size of the structure renders the ordinance arbitrary, unreasonable and unconstitutional.
*32 We disagree. Defendant's reliance upon the Gabe and Kirsch cases, supra, is misplaced.
In the Gabe case plaintiffs, the owners of two-family houses attacked a provision of the zoning ordinance of Margate City defining a family for the purposes of use restrictions in certain zones as "one or more persons related by blood, marriage or adoption or not more than two unrelated persons occupying a dwelling unit as a single non-profit housekeeping unit." Id., 112 N.J. Super. at 342. This definition was adopted in an attempt to eliminate what the governing body considered undesirable conditions resulting from summer rentals at the seashore for unmarried groups of young men and young women. This court held that the definition was "unreasonably restrictive of the ordinary and natural utility of such property as dwellings for people, and of the right of unrelated people in reasonable number to have recourse to common housekeeping facilities in circumstances free of detriment to the general health, safety and welfare." Id. at 349. The court, however, said it was not holding that "an ordinance may not limit a group of unrelated rentors or owners to a reasonable number in a single dwelling unit." Id. at 350. That is the specific issue now before use.
The ordinance in the Kirsch case, supra, was somewhat similar in that it sought to deal with the influx of summer visitors and rentors to a seashore town and, in particular, to control group rentals. The court, in striking down the ordinance as "sweepingly excessive," pointed out that it was aimed at the prohibition of obnoxious rentals but said that in its attempt to bar one offensive dwelling use the ordinances, in effect, barred many uses which were non-obnoxious.
It is clear from the opinion in that case that when "intensity of use, i.e., overcrowding of dwelling units and facilities," is a factor in causing anti-social conduct, zoning ordinances can, under appropriate circumstances, be used for the purposes of control. Id. at 254.
*33 Defendant's attack on the ordinance in question is a generalized one. He argues the principle of invalidity without any factual support in the record.
A substantially similar ordinance has recently been approved by the United States Supreme Court in the case of Village of Belle Terre v. Boraas, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974). A zoning ordinance there restricted land use to one-family dwellings and prohibited occupancy of a dwelling by more than two unrelated persons "as a family" while permitting occupancy by any number of persons related by blood, adoption or marriage. The ordinance was attacked by the owner of the property who had been cited for violating the ordinance as a result of his renting his property to six unrelated college students. The court, in upholding both the zoning ordinance and this principle of land use restriction said:
The regimes of boarding houses, fraternity houses, and the like present urban problems. More people occupy a given space; more cars rather continuously pass by; more cars are parked; noise travels with crowds.
A quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land use project addressed to family needs. This goal is a permissible one. (citation omitted). The police power is not confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion, and clean air make the area a sanctuary for people. [416 U.S. at 9, 94 S.Ct. at 1541, 39 L.Ed.2d at 804].
We see nothing inherently unreasonable in the provisions of the ordinance here attacked, limiting occupancy of the dwelling to four student roomers. The ordinance is presumptively reasonable and valid. The burden is upon defendant to demonstrate that the ordinance is arbitrary and unreasonable, and he has not done so.
Our opinion is not to be understood as approving any other sections of this ordinance. Our attention has been directed *34 solely to the one provision restricting roomers to no more than four students in any one house which defendant was charged with violating.
Affirmed.