221 N.J. Super. 610 (1987)
535 A.2d 544
BOROUGH OF GLASSBORO, PLAINTIFF,
v.
DIANE VALLOROSI AND PAUL SAGES, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Gloucester County.
Decided March 17, 1987.
*611 Joseph F. Lisa, for plaintiff.
Patrick McAndrew, for defendants (Brandt, Haughey, Penberthy, Lewis & Hyland, attorneys).

OPINION
EDWARD S. MILLER, J.S.C.
This case draws into question the validity of an ordinance of the Borough of Glassboro limiting the occupancy of single family dwellings to certain defined groups and further requires the Court to decide whether or not it inhibits a group of college students from occupying such a dwelling. Unfortunately, the ordinance in question had its origins in the traditional conflict between Town and Gown.
In the spring of 1986, Glassboro State College sponsored a "Spring Fling". The festivities were to last a weekend and consisted of a "beer bash" on campus. Unfortunately, the party that started on campus gradually spread to the nearby community; there was drunkenness, loud and abusive language, public urination and approximately 40 arrests were made. As a result of the community's reaction, the Borough of Glassboro amended its zoning ordinance to include the following definition of a family. Section 107-3 defines a family as:
FAMILY  One or more persons occupying a dwelling unit as a single non-profit housekeeping unit, who are living together as a stable and permanent living *612 unit, being a traditional family unit or the functional equivalency thereof. [emphasis supplied.]
This new definition applies to all detached dwellings and structures located in R-2 residential districts; therefore, any group of people occupying a residential dwelling must fit into this definition. According to the amended ordinance, the purpose of the ordinance was to preserve the "family style living" and character of residential neighborhoods. In addition, the amendatory ordinance under Section 2-B stated:
Likewise, Glassboro State College maintains substantial dormitory and apartment facilities for students and faculty members. Therefore, ample housing exists within the Borough for college students and others who choose to live under arrangements which do not meet the definition of family as provided in this ordinance.
The amended ordinance was introduced and adopted on first reading at a public meeting on June 24, 1986. It was properly advertised and a public hearing was held on July 8, 1986. Although the ordinance had been referred to the local planning board, its report and recommendation had not yet been issued by July 8, 1986. Therefore, the ordinance was tabled at the conclusion of the public hearing. On July 21, 1986, the planning board issued its report recommending approval of the ordinance and, at the regular public hearing on July 22, 1986, the ordinance was adopted. However, because of some inadvertent oversight, the deputy borough clerk did not file a copy of the adopted amended ordinance with the county planning board until November 7, 1986.
The home, which is the center of this litigation, is located at 5 Normal Boulevard, Glassboro, in a residential zone. In the spring of 1986, the parents of Peter Vallorosi, a student at the college, decided to purchase the home to give their son and his friends a place to live. On June 25, 1986, Diane Vallorosi, Peter's sister, and Paul Sages, took title to the property. After the home was purchased, S & V Associates, a family partnership, located in Parsippany, New Jersey, became the landlord and was to collect the rents from the property. The partners in *613 S & V Associates were Aldo and Victoria Vallorosi, their daughters Diane and Donna Vallorosi, and Paul Sages.
S & V Associates entered into ten separate leases with ten Glassboro State College students. The leases were to run from semester to semester and could be renewed by each student at the end of the semester if the house was in order at the end of the first term.
The Borough of Glassboro also has a rental facilities ordinance (Chapter 90A of the Borough Code), which requires an application and license for rental facilities throughout Glassboro. By application dated August 28, 1986 and received in the Borough offices on September 4, 1986, defendants applied for a rental facilities license. No such license has been issued.
The ten students who now occupy the house began living there in late August or early September 1986. Plaintiff instituted suit claiming that the ten students did not meet the definition of a family; therefore, they were barred from living in a residential district. Further, plaintiff claimed defendants are in violation of the Borough's rental facilities ordinance in that they do not have a valid rental facilities license for the premises.
This case presents two issues: first, is the ordinance with its present definition of a family valid; and second, if it is valid, do the ten individuals constitute a "family"?
In addressing the first issue, both the United States Supreme Court and the courts of New Jersey have ruled on the validity of ordinances that restrict the number of persons who can live together in residential neighborhoods. Village of Belle Terre v. Boraas, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974), involved an ordinance that restricted the use of one family dwellings to a family defined as:
One or more persons related by blood, adoption, or marriage, living and cooking together as a single housekeeping unit, exclusive of household servants. A number of persons but not exceeding two (2) living and cooking together as a single housekeeping unit though not related by blood, adoption, or marriage shall be deemed to constitute a family.
*614 Six college students who were unrelated rented a house in the town and the owners were cited for violating the ordinance. The United States Supreme Court upheld the ordinance, ruling that the ordinance bore a "rational relationship to a permissible state objective." Also, the ordinance was a valid land use legislation addressed to family needs and did not violate any of the owners' or tenants' constitutional rights.
In Moore v. City of East Cleveland, Ohio, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977), the municipality restricted the occupancy of dwelling units to a "single family"; the definitions of a family covering certain categories of related individuals. Plaintiff was living in her home with her son and two grandsons. The young boys were not brothers but were cousins. Because of her grandsons' relationship, plaintiff was charged with violation of the ordinance since her household did not fit the definition of a family. The Court held the ordinance invalid because it violated plaintiff's due process rights and cut too deeply into the family relationship. The Court distinguished Belle Terre, in that Belle Terre dealt with unrelated individuals and was a valid exercise of police power to promote family needs and family values. Consequently, an ordinance can be valid to regulate the number of unrelated individuals who may occupy a single family dwelling. However, it will be invalid if it intrudes on the relationship between family members.
In New Jersey, Kirsch Holding Co. v. Bor. of Manasquan, 59 N.J. 241 (1971), and Gabe Collins Realty, Inc. v. City of Margate, 112 N.J. Super. 341 (App.Div. 1970), dealt with attempts by seashore communities to exclude group rentals of single family style houses. In both cases, the ordinances that defined a family were held to be invalid because they prohibited so many harmless dwelling uses that they were deemed to be sweepingly excessive and therefore legally unreasonable.
In Berger v. State, 71 N.J. 206 (1976), a home was conveyed as a gift to the New Jersey State Department of Institutions *615 and Agencies to be used for the care of disadvantaged pre-school children. When the State intended to place eight to twelve multi-handicapped pre-school children in the home, the Township objected, claiming the children did not constitute a family according to its ordinance. The Court agreed with Belle Terre that a municipality has the authority to maintain residential neighborhoods. However, the Court struck down the ordinance stating:
When the Mantoloking ordinance defining "family" as those persons related by blood, marriage or adoption is measured against the demands of due process, it is clear that the regulation must fall. It so narrowly delimits the persons who may occupy a single family dwelling as to prohibit numerous potential occupants who pose no threat to the style of family living sought to be preserved. As such, we cannot conclude that the definition of "family" is reasonable. [Berger, at 224.]
Although striking down the ordinance, the Court did give some guidance as to what type of definition of a family will be valid:
We believe a satisfactory resolution of this problem would result, were local governments to restrict single family dwellings to a reasonable number of persons who constitute a bona fide single housekeeping unit.
Similarly, in Holy Name Hospital v. Montroy, 153 N.J. Super. 181 (Law Div. 1977), the Township of Teaneck claimed that a group of unrelated nuns did not constitute a "family" under its ordinance. In addition, the Township argued that Kirsch Holding Co. was overturned by the decision in Belle Terre.
The Court, in addressing that issue, stated:
But Belle Terre's bottom-line holding reads only that occupancy restrictions based upon biological family ties do not violate federal First Amendment rights. Where such ordinances are valid under state law, they will not be disturbed by the federal courts. It is now abundantly clear that the New Jersey guarantees of due process and equal protection may be more demanding and are to be more broadly construed than those of the Federal constitution. [Southern Burlington Cty. N.A.A.C.P. v. Mount Laurel Tp., 67 N.J. 151, 174-75 (1975), cert. den. 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975); Robinson v. Cahill, 62 N.J. 473, 490-92 (1973).]
The Court ruled that the ordinance was invalid, but did offer some advice as to what would be a valid ordinance:
If the regulation were to restrict occupancy of single-family dwellings to persons constituting a bona fide housekeeping unit, it would withstand judicial *616 scrutiny and still carry out the legislative purpose. Berger v. State, supra, 71 N.J. at 225. Any numerical limitation would have to be of general application and reasonably related to habitable floor area or sleeping and bathroom facilities. [Kirsch Holding Co. v. Manasquan, 59 N.J. at 254].
Although the previously cited cases give some guidance as to what definition of "family" would pass constitutional scrutiny, the Supreme Court of New Jersey in State v. Baker, 81 N.J. 99 (1979), gave more definitive guidelines to be followed. In that case, the Plainfield zoning ordinance defined a family as:
One (1) or more persons occupying a dwelling unit as a single non-profit housekeeping unit. More than four (4) persons * * * not related by blood, marriage, or adoption shall not be considered to constitute a family [City of Plainfield Zoning Ordinance § 17:3-1(a)(17)].
The Bakers and Conatas were two families who lived together in a single home. They shared common areas, contributed a fixed amount per week to defray household expenses and considered themselves one large family. The Township charged the Bakers, who were the owners of the home, with violating the ordinance in that their arrangement did not constitute a family.
In holding the ordinance invalid, the Court stated:
Plainfield has a legitimate interest in preserving a "family" style of living in certain residential neighborhoods. Such a goal may be achieved, perhaps more sensibly, by the single-housekeeping unit requirement, as well as the exclusion of incompatible residential uses such as commercial residences, non-familial institutional uses, boarding homes and other such occupancies without infringing unnecessarily upon the freedom and privacy of unrelated individuals.
Further, in addressing the validity of numerical limitations on the number of unrelated persons who can live together and constitute a family, the Court concluded that the word "reasonable" defined in Berger v. State, was intended to imply space-related limitations, thus it merely legitimatizes space-related restrictions of general application. Therefore, the Court held:
Accordingly, we hold that zoning regulations which attempt to limit residency based upon the number of unrelated individuals present in a single non-profit housekeeping unit cannot pass constitutional muster.
Consequently, an ordinance that restricts single family homes to families that are defined as a single housekeeping unit, with *617 no numerical restrictions on the number of persons who can live there, will be valid.
In applying the standards as set forth by the United States Supreme Court and the courts of New Jersey as to the validity of the Glassboro ordinance, this Court rules that the "single housekeeping unit element" is valid. The ordinance contains no numerical limitations on the number of persons who can live together and still constitute a family. Also, a group living together as a stable and permanent living unit will constitute a family, whether it is a traditional family or the functional equivalent of a family. Consequently, the ordinance as written is valid.
Although the ordinance is valid, this does not dispose of this case. The second issue must be addressed as to whether these ten young men living together constitute a "family", thus being permitted to live in the home.
In determining if a group of individuals constitutes a family for the purposes of compliance with a single family restriction, the Supreme Court of New Jersey, in State v. Baker, stated:
As long as a group bears the generic character of a family unit as a relatively permanent household, it should be equally entitled to occupy a single family dwelling as its biologically related neighbors.
Similarly, in Open Door Alcoholism Prog. v. Bd. of Adj., 200 N.J. Super. 191 (App.Div. 1985), the Court ruled that a halfway house for ten recovering alcoholics did not constitute a family because of the transient nature of the residency, pointing out:
It is thus evident that in order for group of unrelated persons living together as a single housekeeping unit to constitute a single family in terms of a zoning regulation, they must exhibit a kind of stability, permanency and functional lifestyle which is equivalent to that of the traditional family unit.
In addition to State v. Baker, holding that two families living together, sharing expenses and using common areas constituted a family, the Court, in Pemberton Tp. v. State, 178 N.J. Super. 346 (App.Div. 1981), certif. den. 87 N.J. 364 (1981), held that a group of six to eight boys adjudicated delinquent who would live together in a home with substitute parents, attend public *618 school, perform household chores and participate in community activities constituted a single housekeeping unit. Also, a group of adolescent girls who were to live together constituted a "family" according to YWCA v. Summit Bd. of Adj., 134 N.J. Super. 384 (Law Div. 1975), aff'd 141 N.J. Super. 315 (App. Div. 1976) and, in Washington Tp. v. Cent. Bergen Comm. Health, 156 N.J. Super. 388 (Law Div. 1978), the Court held that the occupancy of five recovered mental patients who would cook, clean and shop together was permanent and not transitory.
In determining if the ten students constitute a family, this Court must apply the "generic character" standard as set forth in State v. Baker, and expounded in Open Door Alcoholism Prog. v. Bd. of Adj.
The clearly and frankly admitted objectives of the ordinance are to inhibit the rights of college students to live where and how they choose. Throughout the testimony of all the witnesses shines clearly the prejudice and animosity against the college and its students. Thus, the former mayor testified:
I think in my testimony I think our greatest concern was adequate ownership of student housing. But if we could control  make the people who pay their taxes and live in the neighborhood more comfortable I think it's our duty as public officials to do it.
He further elucidated as follows:
Q. The criteria is they are students?
A. The criteria are students do not have the lifestyle of working people.
Q. Suppose they all have jobs, does that change your opinion, part-time jobs?
A. Part-time jobs, no, that wouldn't change my opinion.
THE COURT: What if they have full-time jobs and went to high school would that change your opinion?
THE WITNESS: Yes, that would change my opinion.
The thrust of the former mayor's logic does not make it crystal clear whether it is the occupation of students or the students' variation from the norm of Glassboro students, whatever that norm may be. Thus:
Well, it's a natural thing for  regardless whether people are students or where there is unrest in the neighborhood and the people of a certain dwelling do not *619 conform to the lifestyles of other people in the neighborhood, whether they are students or not they are going to be regulated.
And surely the low point of the day's testimony was the following:
Q. Well, mayor, in your deposition you compared it to toxic waste, did you not?
A. I used that as the concern of the people.
A neighbor who lives adjacent to the property in question testified about the parking of cars along the street, but he did not provide the Court with any valid reasons why these students could not constitute a family. Robert Chester, who lives behind the property, testified about the traffic that surrounds the house and, further, that as a real estate agent, it was his opinion that no one would want to buy next door to a group of students. Again, this testimony was directed at the concerns of the community and not at the relationship between the residents of the property.
The testimony that was most helpful to the Court in determining if a group of young men living together exhibited the "generic character" of a family was that of the students themselves. They stated that they do not just rent a room, but that they rent the whole house. The common areas are shared by all with free access; there is one kitchen that is used by the students and meals are either eaten together or in small groups. There is a common checkbook from which the bills of running the house are paid. Although their leases are for a short period of time, they intend to stay in Glassboro so long as they attend the college.
While it is true that the tenure of occupancy of each student is transitory, life itself is transitory. The test of tenure is thus not its transitory nature, since that is common to all living souls, but whether it is of such sufficient duration that it transcends the evanescent.
This one does. The occupancy of these students is of sufficient duration to remove it from the instability of such short term occupancies as a half-way house for recovering alcoholics. *620 Open Door Alcoholism Prog. v. Bd. of Adj. Instead, it resembles a "commune," which is defined in Webster's Third New International Dictionary as "a small collective unit, typically rural; a group practicing communal living." It also bears a striking resemblance to an Israeli kibbutz, defined in the Ben Yehuda Dictionary as "co-operative living; co-operative settlement." In any event, it qualifies as a single family dwelling within the meaning of this ordinance.
The Court finds from the testimony presented at trial that this group of young men exhibits the "generic character" of a family. The relationship between them shows stability, permanency and can be described as the functional equivalent of a family. When young people attend college, they are expected to exhibit characteristics that will make them good and productive citizens. They should not, however, be required to govern their lifestyle to meet the dictates of those who disapprove of their ways. So long as the individuals (and not the class) conduct themselves lawfully, they are entitled to live their lives free from the supervision, interference or harassment of their neighbors, however distasteful such lifestyle may be.
Thus, the decision of the Court may be summed up as follows:
1. The ordinance is valid. The fact of amendment is not important.
2. It does not apply to this situation since a communal living arrangement of this type qualifies as a single family dwelling under the ordinance, the use not being commercial in nature.
The Court cannot but be disheartened at a mental climate that classifies college students, presumably the brightest and best of our society, as less worthy than toxic waste. True, they may have peculiar lifestyles; true, they frequently exhibit a less respectful attitude toward their elders than those in present authority would prefer and they sometimes behave in such a manner as to drive their elders to distraction. Yet it *621 cannot be forgotten not only that they are entitled to their lifestyle as a matter of constitutional right, but in a few fleeting years they will stand in the shoes of those they now offend  those whose present occupancy of power is but fleeting.
More than half a century ago, a wise jurist said:
[I]f there is any principle of the Constitution that more imperatively calls for attachment than any other it is the principle of free thought  not free thought for those who agree with us but freedom for the thought that we hate. United States v. Schwimmer, 279 U.S. 644, 49 S.Ct. 448, 73 L.Ed.2d 889 (1929).
That simple sentence sums up all that is great about our American Dream. It must not be forgotten but must be allowed to live and flourish, particularly in this community which is not only the seat of a great institution of higher learning but the site of one of the more significant international conferences of modern times.
Counsel for defendants will submit an appropriate order.