BOROUGH OF GLASSBORO, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF–APPELLANT AND CROSS–RESPONDENT, v. DIANE VALLOROSI AND PAUL SAGES, DEFENDANTS–RESPONDENTS AND CROSS–APPELLANTS.

Argued March 14, 1989—Decided January 30, 1990.

*Joseph F. Lisa* argued the cause for appellant and cross-respondent.

*Patrick F. McAndrew* argued the cause for respondents and cross-appellants (*Brandt, Haughey, Penberthy, Lewis & Hyland,* attorneys).

*Stephen M. Eisdorfer,* Assistant Deputy Public Advocate, argued the cause for *amicus curiae* Public Advocate of New Jersey (*Alfred A. Slocum,* Public Advocate, attorney).

PER CURIAM.

The narrow issue presented in this case is whether a group of ten unrelated college students living in defendants' home constitutes a "family" within the definition of a restrictive zoning ordinance. The Borough of Glassboro concedes that a primary purpose of the ordinance was to prevent groups of unrelated college students from living together in the Borough's residential districts. The ordinance limits residence in such districts to stable and permanent "single housekeeping units" that constitute either a "traditional family unit" or its functional equivalent. The Chancery Division concluded that the relationship among this group of students and their living arrange-

ments within the home demonstrated the "generic character" of a family, and denied the Borough injunctive relief. 221 *N.J.Super.* 610, 620 (1987). The Appellate Division affirmed. 224 *N.J.Super.* 91 (1988). We now affirm the judgment of the Appellate Division.

## I.

In July 1986, the Borough amended its zoning ordinance, apparently in response to a rowdy weekend celebration by Glassboro State College students. The amendment applied to the Borough's residential districts and limited the use and occupancy of "detached dwellings" and structures with "two dwelling units" to "families" only. The ordinance defined a "family" as

one or more persons occupying a dwelling unit as a single non-profit housekeeping unit, who are living together as a stable and permanent living unit, being a traditional family unit or the functional equivalency [sic] thereof. [Glassboro, N.J., Code § 107–3 (1986).]

The amendment included a statement of purpose that plainly reflected the Borough's intention to confine college students either to the dormitories provided by Glassboro State College or to the other zoning districts that permit apartments and townhouses:

The preservation of "family style living" and the preservation of the character of residential neighborhoods as such are legitimate zoning goals. The Borough of Glassboro is concerned with maintaining the stability and permanence generally associated with single family occupancy throughout its residential neighborhoods. A municipality may endeavor, by legitimate means, to secure and maintain the blessings of quiet seclusion and to make available to its inhabitants the refreshment of repose and the tranquility of solitude. The Borough of Glassboro possesses these goals and, by the regulation herein contained, implements them in a manner which bears a reasonable relationship to the problem sought to be ameliorated. That problem is the use and occupancy of single family and two family dwellings, interspersed among the residential neighborhoods of the community, by groups of individuals whose living arrangements, although temporarily in the same dwelling unit, are transient in nature and do not possess the elements of stability and permanency which have long been associated with single family occupancy. Such living arrangements are not compatible with the family style living sought to be preserved. Such occupancies are in the nature of rooming houses, boarding

homes, hotels, motels, and the like. Such uses do not meet the definition of family as contained in this ordinance and are prohibited in detached dwellings and structures with two dwelling units in all residential zones. This ordinance provides zoning classifications which allow for ample apartment and townhouse uses, and there are presently many such uses in existence throughout the Borough. Likewise, Glassboro State College maintains substantial dormitory and apartment facilities for students and faculty members. Therefore, ample housing exists within the Borough for college students and others who choose to live under arrangements which do not meet the definition of family as provided in this ordinance. [*Id.*, § 107-93B.]

In June 1986, defendants purchased a home located in the restricted residential zone. The purchase was intended to provide a college home for Peter Vallorosi, the brother of defendant Diane Vallorosi and the son of two partners in S & V Associates, a real-estate investment partnership. (Under the partnership agreement, S & V Associates acquired equitable title to the premises when defendants purchased the home.) It was contemplated that nine of Peter's friends would share the house with him while the group attended Glassboro State College. Seven of the ten students renting the house were sophomores at the time their lease took effect. They were all between the ages of eighteen and twenty. All ten students entered into separate, renewable leases for a semester-long period of four months. At the end of each semester, a student could renew the lease for another term "if the house is found to be in order at [the] end of [the preceding] term."

The students moved into their new home in early September 1986. The house had one large kitchen, which was shared by all ten students. The students often ate meals together in small groups, cooked for each other, and generally shared the household chores, grocery shopping, and yard work. A common checking account paid for food and other bills. They shared the use of a telephone. Although uncertain of living arrangements after graduation, the students intended to remain tenants as long as they were enrolled at Glassboro State College.

The Borough commenced this action in September 1986, seeking an injunction against the use and occupancy of the house by

the students. The complaint alleged that the occupants did not constitute a "family" as defined in the Borough's ordinance. Defendants contended that the amendment to the zoning ordinance was not authorized by the Municipal Land Use Law, *N.J.S.A.* 40:55D–1 to –112, and violated the New Jersey Constitution in that it regulated a class of people rather than a use of property. Defendants also challenged the amendment as inconsistent with the Borough's master plan and therefore invalid because of non-compliance with *N.J.S.A.* 40:55D–62a (authorizing adoption of zoning amendment inconsistent with master plan by vote of majority of entire governing body with statement of reasons set forth in resolution and recorded in minutes). Further, defendants contended that the students' occupancy was a protected non-conforming use because the amendment did not become effective until filed with the Gloucester County Planning Board in November 1986, citing *N.J.S.A.* 40:55D–16. Finally, defendants argued that the communal nature of the students' occupancy, coupled with their intention to live there together throughout their college careers, satisfied the ordinance's requirement that any occupancy be functionally equivalent to "a traditional family unit."

The Chancery Division upheld the constitutionality of the ordinance, but did not address defendants' contentions that the ordinance was inconsistent with the Borough's master plan or that the ordinance did not take effect until after the students had commenced occupancy of the house. The court focused on whether the specific circumstances of the students' occupancy satisfied the ordinance's requirements:

> The testimony that was most helpful to the Court in determining if a group of young men living together exhibited the "generic character" of a family was that of the students themselves. They stated that they do not just rent a room, but that they rent the whole house. The common areas are shared by all with free access; there is one kitchen that is used by the students and meals are either eaten together or in small groups. There is a common checkbook from which the bills of running the house are paid. Although their leases are for a short period of time, they intend to stay in Glassboro so long as they attend the college. [221 *N.J.Super.* at 619.]

Based on this testimony, the court concluded that the relationship among the students "shows stability, permanancy and can be described as the functional equivalent of a family." *Id.* at 620. The Appellate Division affirmed on the basis of the trial court's analysis. 224 *N.J.Super.* at 92.

We granted the Borough's petition for certification, 114 *N.J.* 314 (1988), and the defendant's cross-petition challenging the constitutionality of the ordinance and its inconsistency with the Borough's master plan, and asserting that the students' occupancy was a preexistent non-conforming use. *Id.* at 315.

During the pendency of this appeal, the Court was notified that Peter Vallorosi withdrew from Glassboro State College and that the use of the home by the students ended effective September 1, 1988. Nevertheless, we render a decision on the merits because of the important issues presented. *In re Farrell,* 108 *N.J.* 335, 347 (1987).

## II.

The legal principles determinative of this appeal are clear and well-settled. The courts of this state have consistently invalidated zoning ordinances intended "to cure or prevent * * * anti-social conduct in dwelling situations." *Kirsch Holding Co. v. Borough of Manasquan,* 59 *N.J.* 241, 253–54 (1971). We have insisted that the municipal power to adopt zoning regulations

be reasonably exercised; they may be neither unreasonable, arbitrary nor capricious. The means chosen must have a real and substantial relation to the end sought to be achieved. Moreover, the regulation must be reasonably designed to resolve the problem without imposing unnecessary and excessive restrictions on the use of private property. [*Berger v. State,* 71 *N.J.* 206, 223–24 (1976) (citations omitted).]

In *Kirsch Holding Co. v. Borough of Manasquan, supra,* 59 *N.J.* 241, we invalidated ordinances in two shore communities that restrictively defined "family" and prohibited seasonal rentals by unrelated persons. We held that the challenged ordinances "preclude so many harmless dwelling uses * * * that

they must be held to be so sweepingly excessive, and therefore legally unreasonable, that they must fall in their entirety." *Id.* at 251–52. Similarly, in *Gabe Collins Realty, Inc. v. City of Margate City*, 112 *N.J.Super.* 341 (1970), the Appellate Division invalidated a shore community's restrictive ordinance limiting "family" to persons related by blood, marriage, or adoption, or not more than two unrelated persons. The objective of the ordinance was to eliminate summer rentals by unrelated young men and women. The court concluded that the ordinance was "unreasonably restrictive of the ordinary and natural utility of such property as dwellings for people, and of the right of unrelated people in reasonable number to have recourse to common housekeeping facilities * * *." *Id.* at 349.

In *Berger v. State, supra,* 71 *N.J.* 206, we expressed our agreement with the principle that "[t]he concept of a one family dwelling is based upon its character as a single housekeeping unit." *Id.* at 227 (quoting 3 Rathkopf, *The Law of Zoning and Planning* 200 (Supp.1975)). A significant issue in *Berger* was the validity of a restrictive zoning ordinance limiting the definition of family to "persons related by blood, marriage or adoption * * *." *Id.* at 217. The challenged use was a group home for eight to twelve multi-handicapped, pre-school children who would reside in a twelve-room ocean-front house with a married couple experienced as foster parents. Staff hired by the New Jersey Department of Institutions and Agencies would provide support services but would not reside on the premises. We concluded that the State's proposed use of the premises was reasonable and thus immune from regulation by the local zoning ordinance. *Id.* at 220. We also found the ordinance invalid by virtue of *N.J.S.A.* 40:55–33.2 (since repealed and replaced by *N.J.S.A.* 40:55D–66c), which prohibited municipalities from discriminating in zoning ordinances between children related to occupants of single-family dwellings by blood, marriage, or adoption, and children residing in such dwellings by virtue of placement in a "group home." *Id.* at 220–21. Finally, we held

that an ordinance limiting the term "family" to persons related by blood, marriage, or adoption cannot "satisfy the demands of due process." *Id.* at 223. Such an ordinance

so narrowly delimits the persons who may occupy a single family dwelling as to prohibit numerous potential occupants who pose no threat to the style of family living sought to be preserved. [*Id.* at 224.]

Accordingly, we expressed our clear preference for zoning provisions that equated the term "single family" with a "single housekeeping unit." *Id.* at 225–27.

In *State v. Baker*, 81 *N.J.* 99 (1979), we invalidated the City of Plainfield's zoning ordinance that defined "family" in terms of a "single non-profit housekeeping unit" but limited to four the number of persons unrelated by blood, marriage, or adoption that would constitute a "family." Defendant was convicted of violating the ordinance when he and his wife, their three children, and Mrs. Conata and her three children lived in his home. Defendant, an ordained Presbyterian minister, testified that the Bakers and Conatas had common religious beliefs and lived together as an extended family, sharing common areas and household expenses. Recognizing that the municipality's goal of preserving stable, single-family residential areas was entirely proper, we nevertheless held that the ordinance was violative of our state constitution because "the means chosen [did] not bear a substantial relationship to the effectuation of that goal." *Id.* at 103. We observed:

The fatal flaw in attempting to maintain a stable residential neighborhood through the use of criteria based upon biological or legal relationships is that such classifications operate to prohibit a plethora of uses which pose no threat to the accomplishment of the end sought to be achieved. Moreover, such a classification system legitimizes many uses which defeat that goal. Plainfield's ordinance, for example, would prohibit a group of five unrelated "widows, widowers, older spinsters or bachelors—or even of judges" from residing in a single unit within the municipality. [*Id.* at 107 (citation omitted).]

We noted that municipalities could appropriately deal with overcrowding or congestion by ordinance provisions that limit occupancy *"in reasonable relation to available sleeping and bathroom facilities or requiring a minimum amount of habitable floor area per occupant." Id.* at 110 (quoting

*Kirsch Holding Co. v. Borough of Manasquan, supra,* 59 *N.J.* at 254). Declining to follow the United States Supreme Court's decision in *Village of Belle Terre v. Boraas,* 416 *U.S.* 1, 94 *S.Ct.* 1536, 39 *L.Ed.*2d 797 (1974), which upheld a comparable ordinance, we concluded that "[r]estrictions based upon legal or biological relationships such as Plainfield's impact only remotely upon [overcrowding and congestion] and hence cannot withstand judicial scrutiny." *Id.* at 111.

Several of our reported cases involve municipalities whose zoning ordinances defined "family" in terms of a "single housekeeping unit" as suggested by *Berger v. State, supra,* 71 *N.J.* at 227. In *Township of Washington v. Central Bergen Community Mental Health Center, Inc.,* 156 *N.J.Super.* 388 (Law Div.1978), the municipality challenged the occupancy of a residential dwelling used as a transitional residence for five former mental patients who shared rent, expenses, and housekeeping chores under the supervision of a community mental-health center. The zoning ordinance defined family as "[a]ny number of individuals living together as a single housekeeping unit and using certain rooms and housekeeping facilities in common." *Id.* at 413–14. The Law Division held that the challenged occupancy qualified as a single housekeeping unit, observing that "the residents present a picture very much akin to that of a traditional family and their lifestyle is not of a transient or temporary nature * * *." *Id.* at 418–19 (citations omitted).

In *Township of Pemberton v. State,* 178 *N.J.Super.* 346 (App.Div.1981), the township challenged the use of residential property as a group home for six to eight boys, ages eight to thirteen, who had been committed to the State Training School for Boys but were considered suitable for diversion from that institution to a residential setting that approximated a normal family environment. The boys would be supervised by a married couple with appropriate professional training. They would attend local schools, be encouraged to participate in scouting and Little League, and otherwise be expected to integrate with the community. The arrangement contemplated a residency

period of approximately six months. The local zoning ordinance permitted "detached dwelling units," defined to include buildings occupied for residence purposes by "one housekeeping unit." *Id.* at 353. Reversing a Law Division decision enjoining the proposed use, the Appellate Division concluded that the use was permitted by the ordinance, noting that our case law afforded "protection for groups of unrelated persons which have been formed for the purpose of permitting traditionally institutional functions to be performed in the more salutary and constructive context of a 'reproduced' single-family setting." *Id.* at 354; *accord Holy Name Hosp. v. Montroy*, 153 *N.J.Super.* 181, 188–89 (Law Div.1977) (invalidating local zoning ordinance limiting occupancy by more than three unrelated persons, upholding ordinance only as limiting occupancy by single housekeeping unit, and holding that three residences occupied by groups of nuns constituted single housekeeping units).

By contrast, in *Open Door Alcoholism Program, Inc. v. Board of Adjustment of New Brunswick*, 200 *N.J.Super.* 191 (App.Div.1985), the court held that a halfway house for ten recovering alcoholics did not constitute a single-family dwelling, on the basis that the occupants lacked the "generic characteristics of a single family." *Id.* at 200. The residents of the halfway house were referred there after having satisfactorily completed treatment for alcoholism. The average occupancy was for six months, although an occupant was free to leave at any time. The residents shared cooking and household chores and took meals together. A resident manager administered the facility. Although the local zoning ordinance provided that not more than three unrelated individuals constituted a "family," the Appellate Division held that limitation to be invalid under *State v. Baker, supra*, 81 *N.J.* at 113, and construed the ordinance as if it defined "family" by the standard of a single housekeeping unit. *Open Door Alcoholism Program, supra*, 200 *N.J.Super.* at 197. The court concluded that the halfway house occupants did not constitute a single housekeeping unit:

> It is thus evident that in order for a group of unrelated persons living together as a single housekeeping unit to constitute a single family in terms of a zoning regulation, they must exhibit a kind of stability, permanency and functional lifestyle which is equivalent to that of the traditional family unit. In our view, the residents of plaintiff's proposed halfway house, although comprising a single housekeeping unit, would not bear these generic characteristics of a single family. While the residents would share in the household responsibilities and dine together, their affiliation with one another would be no different than if they were fellow residents of a boarding house. Clearly, their living arrangements would not be the functional equivalent of a family unit. The individual lifestyles of the residents and the transient nature of their residencies would not permit the group to possess the elements of stability and permanency which have long been associated with single-family occupancy. [*Id.* at 199–200 (citation omitted).]

Thus, our cases preclude municipalities from adopting zoning regulations that unreasonably distinguish between residential occupancy by unrelated persons in comparison with occupancy by individuals related by blood, marriage, or adoption. Our decisions permit zoning regulations to restrict uses in certain residential zones to single housekeeping units. *See Berger v. State, supra,* 71 *N.J.* at 227. But the standard for determining whether a use qualifies as a single housekeeping unit must be functional, and hence capable of being met by either related or unrelated persons. *Id.* at 225–27.

### III.

The Glassboro ordinance at issue here defines "family" by a standard consistent with our decisional law. The ordinance imposes no explicit distinction between related and unrelated people. It provides a functional description of a single housekeeping unit, in terms of "persons * * * living together as a stable and permanent living unit, being a traditional family unit or the functional equivalency [sic] thereof." The ordinance's statement of purpose clearly reflects Glassboro's assumption that the occupancy of residential dwellings by college students would not satisfy the ordinance's standard, but the ordinance makes no impermissible distinction between college students and any other group of unrelated individuals. *Cf. Riggs v. Township of Long Beach,* 109 *N.J.* 601, 613 (1988) ("Courts

generally will not inquire into legislative motive to impugn a facially valid ordinance * * *.").

Although the Public Advocate, as *amicus,* challenges the constitutionality of the Glassboro ordinance, we need not consider that issue, nor the issues raised in the cross-petition, in the context of this record. The narrow issue before us is whether there is sufficient credible evidence in this record to sustain the trial court's factual finding that the occupancy of defendants' dwelling by these ten college students constituted a single housekeeping unit as defined by the Glassboro ordinance. *See Rova Farms Resort, Inc. v. Investors Ins. Co. of America,* 65 *N.J.* 474, 484 (1974).

In view of the unusual circumstances of this case, we find adequate evidence to uphold the Law Division's ruling. The uncontradicted testimony reflects a plan by ten sophomore college students to live together for three years under conditions that correspond substantially to the ordinance's requirement of a "stable and permanent living unit." To facilitate the plan, the house had been purchased by relatives of one of the students. The students ate together, shared household chores, and paid expenses from a common fund. Although the students signed four-month leases, the leases were renewable if the house was "in order" at the end of the term. Moreover, the students testified to their intention to remain in the house throughout college, and there was no significant evidence of defections up to the time of trial. As noted above, the students' occupancy ended in September 1988 because of Peter Vallorosi's post-trial withdrawal from college. *Supra* at 426–428.

It is a matter of common experience that the costs of college and the variables characteristic of college life and student relationships do not readily lead to the formation of a household as stable and potentially durable as the one described in this record. On these facts, however, we cannot quarrel with the Law Division's conclusion that the occupancy at issue here

"shows stability, permanency and can be described as the functional equivalent of a family." 221 *N.J.Super.* at 620.

It also bears repetition that noise and other socially disruptive behavior are best regulated outside the framework of municipal zoning. As we observed in *State v. Baker, supra,* 81 *N.J.* at 111:

> Other legitimate municipal concerns can be dealt with similarly. Traffic congestion can appropriately be remedied by reasonable, evenhanded limitations upon the number of cars which may be maintained at a given residence. Moreover, area-related occupancy restrictions will, by decreasing density, tend by themselves to reduce traffic problems. Disruptive behavior—which, of course, is not limited to unrelated households—may properly be controlled through the use of the general police power. As we stated in *Kirsch v. Borough of Manasquan, supra:*
>
> > Ordinarily obnoxious personal behavior can best be dealt with officially by vigorous and persistent enforcement of general police power ordinances and criminal statutes * * *. Zoning ordinances are not intended and cannot be expected to cure or prevent most anti-social conduct in dwelling situations. [59 *N.J.* at 253–54.]

Judgment affirmed.

For affirmance—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

For reversal—None.