STATE OF VERMONT

SUPERIOR COURT                        ENVIRONMENTAL DIVISION

|  |  |  |
|---|---|---|
| In re Beliveau Notice of Violation | } | Docket No. 193-8-08 Vtec |
| (Appeal of Beliveau) | } | |
| | } | |
| | | |
| Town of Fairfax, Plaintiff, | } | |
| | } | |
| v. | } | Docket No. 274-11-08 Vtec |
| | } | |
| Leon Beliveau, Defendant. | } | |
| | } | |

Decision and Order on Summary Judgment after Remand from Supreme Court

The above-captioned matters are before this Court on remand from the Supreme Court. In re Beliveau Notice of Violation, Nos. 2010-64, 2010-65, slip op. at 2 (Vt. July 16, 2010) (unpublished mem.).

In Docket No. 193-8-08 Vtec, Appellant Leon Beliveau appealed from a decision of the Development Review Board (DRB) of the Town of Fairfax, upholding a Notice of Violation for changing the use of his property at 1166 Main Street from the use category of a single-family residence to the use category of a rooming and boarding house, without first obtaining a zoning permit for the change of use to the rooming and boarding house use.[1]  In Docket No. 274-11-08 Vtec, the Town of

---

[1]  Nothing about this case addresses whether the subject property would or would not qualify for a permit for the rooming-and-boarding-house use, which is also a permitted use category in the district but requires site plan approval.  Only if Mr. Beliveau were to apply for such a permit and if the decision were appealed to the DRB and to this Court would the merits of that permit decision be before this Court.

1

Fairfax brought an enforcement action against Defendant Leon Beliveau for the same violation.

The Town is represented by John H. Klesch, Esq.; Appellant-Defendant Leon Beliveau (Defendant) represented himself in the initial summary judgment and trial, but was represented by Peter J. McDougall, Esq., in his appeal to the Supreme Court and remains represented by Attorney McDougall in the present proceedings on remand.

Procedural History

In the initial proceedings, this Court first concluded many issues in the cases by summary judgment on July 28, 2009 (the 2009 Summary Judgment Decision), and then held an evidentiary hearing and issued a decision on January 13, 2010 concluding the merits of both cases (the 2010 Merits Decision). The Supreme Court reversed and remanded both cases on the basis that, as of the time of the summary judgment decision, the Town had failed to establish a sufficient factual basis for the conclusion that Defendant was operating a rooming and boarding house.[2] In particular, the Supreme Court remanded for this Court to determine whether Defendant resided in the house during the period of violation, that is, whether it was an "owner[-]occupied" residence, and for this Court to determine whether individuals were supplied with and charged for sleeping accommodations "for a fixed period of time" rather than for an indefinite period. In re Beliveau Notice of Violation, Nos. 2010-64, 2010-65, slip op. at 2 (Vt. July 16, 2010) (unpublished mem.).

---

[2] The Supreme Court did not consider whether the evidence presented at trial was sufficient to support the conclusion that Defendant was operating a boarding and rooming house, restricting its analysis to the state of the evidence at the time of the summary judgment decision.

On remand, the parties conducted additional discovery, and then agreed that the remanded issues should be bifurcated, with the issue of whether there was a violation again being presented to the Court by cross-motions for summary judgment without a further evidentiary hearing. At the scheduling telephone conference held on December 6, 2010, the Court established a briefing schedule for the summary judgment motions, and reserved its decision as to whether to order mediation until after the issue of violation would be decided. The parties agreed that the Court would schedule a conference after the summary judgment decision to determine whether to order mediation and whether to schedule an evidentiary hearing or further motions on the remaining issues of remedy and penalty, if any.

As well as the issues now required to be addressed on remand, the 2009 Summary Judgment Decision established the undisputed periods of occupancy of rooms at the property according to each person who paid Defendant for the use of sleeping accommodations, as well as the amounts each person paid to Defendant for that occupancy through May 2009. The 2009 Summary Judgment Decision also established the amounts that were expended by the Town in attorney's fees and costs related to the litigation as of June 23, 2009. At trial, the Court took evidence in particular on the monetary factors that should be considered by the Court in calculating an appropriate penalty for the time period of the violation; the entire hearing transcript has been submitted by the Town as its Exhibit 2 in connection with the present motions.

Following the remand, the parties each moved for summary judgment in the consolidated cases. The facts stated in this decision are undisputed unless otherwise noted.

Factual Background

Defendant owns a house at 1166 Main Street (the house) in the Growth Center zoning district of the Town of Fairfax. A single-family dwelling is a permitted use in the district; if Defendant is making a single-family use of the house it qualifies as a continuation of a preexisting allowed use, without a zoning permit.

The use category of rooming and boarding house is also a permitted use in the growth center zoning district. Appendix B of the Zoning Bylaws defines a Rooming and Boarding House as "[a]n owner[-] occupied residence where a person or persons, for a fixed period of time, are supplied with and charged for meals or sleeping accommodations or both." As well as requiring a zoning permit, a rooming and boarding house requires site plan approval because it is other than a single-family or duplex residential use. Zoning Bylaws, § 4.12. Defendant has not sought or obtained a permit to change the use of the house from a single-family use to a rooming-and-boarding-house use.

On May 22, 2008 the Zoning Administrator hand-delivered to Defendant a letter informing him that the house was being used as a rooming and boarding house without a zoning permit for the change in use, in violation of the Zoning Bylaws. On June 5, 2008, the Zoning Administrator issued a formal Notice of Violation referencing the earlier letter and stating that Defendant was using the house as a rooming and boarding house without obtaining a permit in accordance with § 2.2.A of the Zoning Bylaws. Defendant's appeal of that Notice of Violation is the subject of Docket No. 193-8-08 Vtec. The Town subsequently brought enforcement proceedings against Defendant in Docket No. 274-11-08 Vtec.

Both parties agree that Defendant has used the house as his own primary residence from February of 1999 through the period at issue in the present case, and that therefore it is an owner-occupied house for the purposes of analysis under the Zoning Bylaws. Def.'s Cross-Mot. for Summ. J. and Opposition to Town's Mot. for

4

Summ. J. at 1–2; Town's Mot. for Summ. J. at 4. Defendant explained at trial that, since at least June of 2008, he has treated the house as occupied one-sixth as his own residence, and five-sixths as rental real estate. Town's Ex. 2, Transcript of Aug 20, 2009 Evidentiary Hearing, at 93. As stated in Defendant's discovery responses provided as Town's Ex. 1, Defendant maintains a bedroom for his own exclusive personal use, even when he is not on the premises, and has slept at the house for at least 182 nights (that is, more than six months) in each of calendar year 2008 and 2009.[3] As stated at trial, the remainder of the time Defendant lives in Thailand.

Since before the Notice of Violation, Defendant has provided sleeping accommodations and charged for and received payments for those sleeping accommodation from occupants of rooms in the house, pursuant to oral agreements between Defendant and each occupant. Def. Ex. 1, Beliveau Aff. at ¶ 4; Def. Ex. 2, Bessett Aff. at ¶¶ 4–5; Def. Ex. 3, Metcalf Aff. at ¶¶ 4–5; Def. Ex. 4, Sweeten Aff. at ¶¶ 4–5. The individuals who rent rooms from Defendant at the house at 1166 Main St. pay Defendant a set amount each month, which varies by individual, in exchange for their sleeping accommodations. A total of nine individuals, with a maximum of six at any one time, have rented rooms at Defendant's house during the period from August 2008 through September 2010. Defendant's Response to [Town's]

---

[3] Although the fact of whether the house is owner-occupied is not disputed in the parties' memoranda, or by Defendant's testimony at trial, it is contradicted by Defendant's own 2008 and 2009 tax returns, attached to the Town's Supplemental Rule 56(c)(2) Statement filed March 2, 2011. For both years, on Defendant's Schedule E, covering supplemental income and loss from rental real estate, at Line 2, Defendant has checked "No" in answer to the question, for the rental real estate at 1166 Main Street (the house), "did you or your family use it during the tax year for personal purposes for more than the greater of •14 days, or •10% of the total days rented at fair market value." Similarly, on the state tax forms HI-144 Defendant did not list either son as a member of his household. However, although the discrepancy may have tax consequences for Defendant, it does not affect the analysis in this decision.

Interrogatory 1(b), Town's Ex. 1, unnumbered p. 13 (also numbered LB-000001 in the lower right-hand corner)

From time to time, Defendant has allowed individuals to continue residing at the house despite their paying less than the agreed-upon amount for a particular month. Def. Ex. 2, Bessett Aff. at ¶ 6; Def. Ex. 3, Metcalf Aff. at ¶ 6. Neither Defendant, nor Defendant's tenants, are obligated to continue their rental relationship beyond the month for which rent is currently paid. During one period or another, Defendant's sons Aaron and Ryan, and for a time Aaron's girlfriend Nicole Rivers, have been among the individuals residing at the house and paying a monthly rental amount. Defendant's Responses to the Town's Interrogatories, Town's Ex. 1, show that Defendant and his sons do not function as household members in that they do not often prepare and eat meals together. For both federal and state tax purposes Defendant also does not consider either son as a member of his household or family, but instead treats their payments as rental income. (See note 3 above)

In the 2010 Merits Decision the Court determined from the evidence at trial Defendant charged for and received payments for sleeping accommodations from the individuals renting rooms in his house from June 12, 2008 (7 days after the notice of violation) through July 2009, a period of 414 days. Rounded to the months of August 2008 through July 2009, as shown instead on Town's Ex. 1, unnumbered p. 13, Defendant charged for and received a total of $14,803.70 in monthly payments for the rental of rooms in the house, from a total of eight different individuals renting rooms for differing numbers of months.[4]

Defendant ceased charging for and receiving payments for sleeping

---

[4] The 2010 Merits Decision, based on the evidence received at trial, had found that Defendant received a total amount of $17,804 during the 414-day period.

6

accommodations for the months of August, September, and October 2009, but resumed charging for and receiving payments for sleeping accommodations in November 2009 and continued receiving payments through at least September 2010. Town Ex. 1 at 4–6, and unnumbered p. 13.[5]  Rounded to the months of November 2009 through September 2010, as shown in Town's Ex. 1, unnumbered p. 13, Defendant charged for and received a total of $13,857 in monthly payments during that period for the rental of rooms in the house, from a total of five different individuals renting rooms for differing numbers of months.  The total amount received by Defendant for providing sleeping accommodations was $28,660.70.

The 2010 Merits Decision also found that the Town had incurred $10,920.75 in attorney's fees and $283.93 in court costs and reimbursable attorney's expenses in connection with the above-captioned litigation, for a total of $11,204.68 as of the date of the 2010 Merits Decision.  Material facts are disputed as to the amounts of attorney's fees and costs incurred by the Town during or allocated to the Supreme Court appeal and during these remanded proceedings, as well as whether or how they should be considered in assessing a penalty if a violation is found.

Standard Applicable to Cross-Motions for Summary Judgment

A grant of "[s]ummary judgment is appropriate when, giving the benefit of all reasonable doubts and inferences to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Gade v. Chittenden Solid Waste Dist., 2009 VT 107, ¶ 7 (citing Mooney v. Town of Stowe, 2008 VT 19, ¶ 5, 183 Vt. 600 (mem.); V.R.C.P. 56(c)).  When considering cross-motions for summary judgment, the Court gives each party "the

---

[5]  Although some of the occupants' affidavits reflect that Defendant continued to provide at least three of them with sleeping accommodations through January 2011, information reflecting payments to Defendant only runs through September 2010.

benefit of all reasonable doubts and inferences when the opposing party's motion is being judged." City of Burlington v. Fairpoint Communications, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332 (citing Toys, Inc. v. F.M. Burlington, Co., 155 Vt. 44 (1990)). If the moving party's position is supported with an affidavit and documentary evidence, the opposing party "is required to 'come forward with an opposing affidavit or other evidence that raises a dispute as to the fact or facts in issue.'" U.S. Bank Nat'l Ass'n v. Kimball, 2011 VT 81, ¶ 15 (citing Alpstetten Ass'n, Inc. v. Kelly, 137 Vt. 508, 514 (1979)). That is, a party opposing a motion for summary judgment may not rest on bare allegations alone. Johnson v. Harwood, 2008 VT 4, ¶ 5, 183 Vt. 157.

Constitutionality of the Definition of Rooming and Boarding House

Defendant argues that the Zoning Bylaws are unconstitutionally vague with regard to the definition of rooming and boarding house. Def.'s Cross-Mot. for Summ. J. and Opposition to Town's Mot. for Summ. J. at 10–15. The Zoning Bylaws define a Rooming and Boarding House as "[a]n owner[-] occupied residence where a person or persons, for a fixed period of time, are supplied with and charged for meals or sleeping accommodations or both." Appendix B. Defendant argues that this definition is vague in that it could be interpreted to include families whose grown children are living at home and contribute to the cost of maintaining the household, thus allowing the zoning administrator unfettered discretion in deciding whether a particular living arrangement is a rooming and boarding house or a single-family dwelling. Def.'s Cross-Mot. for Summ. J. and Opposition to Town's Mot. for Summ. J. at 12–13.

When interpreting and applying municipal regulations, the Court applies the familiar rules of statutory construction. In re Champlain Coll. Maple St. Dormitory, 2009 VT 55, ¶ 13, 186 Vt. 313; Appeal of Weeks, 167 Vt. 551, 554 (1998). The Court must begin with a presumption of constitutionality when it construes a zoning

bylaw.  See <u>Hunter v. State</u>, 2004 VT 108, ¶ 31, 177 Vt. 339 (citing <u>Benning v. State</u>, 161 Vt. 472, 481 (1994)).

Zoning bylaws are required to "'specify sufficient conditions and safeguards' to guide applicants and decision makers." <u>In re Appeal of JAM Golf, LLC</u>, 2008 VT 110, ¶ 13, 185 Vt. 201 (citing <u>Town of Westford v. Kilburn</u>, 131 Vt. 120, 122 (1973)). Zoning bylaws must provide adequate guidance to prevent discrimination and standardless discretion on the part of the DRB, <u>id</u>. at ¶¶ 13, 17, while also being "general enough to avoid inflexible results." <u>Town of Westford v. Kilburn</u>, 131 Vt. 120, 125 (1973).  The court may look to the entire ordinance to determine whether a sufficient standard is articulated.  <u>In re Pierce Subdivision Application</u>, 2008 VT 100, ¶ 20, 184 Vt. 365.

The Zoning Bylaws also contain a definition of "family," a term found in the use category of a single-family dwelling.  The term "family" is defined as "[o]ne or more persons living as a household unit, but not including individuals or groups occupying rooming and boarding houses, clubs, motels, or hotels."  Appendix B. Thus, the people comprising a family are not necessarily related to one another, but must be living as a household unit, in contrast to persons who occupy rooming and boarding houses, clubs, hotels, and motels.[6]

This distinction is clear enough to avoid standardless discretion.  Persons living in a single-family dwelling live as a household unit, regardless of whether all or only some of the household members contribute[7] money or services to the

---

[6]    Moreover, the distinction between single family dwellings and rooming and boarding houses does not violate equal protection because of the significantly different impact that such uses can have on a surrounding area, such as an increase in the number of vehicles parked on the property beyond that expected from a single-family use.

[7] Moreover, the concept of "contributing" to a household's expenses is distinct from that of a business owner's "charging" for providing sleeping accommodations.

running of the household. Other jurisdictions that have addressed this issue have held that a single-family zoning regulation includes groups of unrelated persons living together in which the living arrangement is stable, permanent, and not for profit, and the people living together function in the same manner that a traditional family unit would function. See, e.g., Appeal of Miller, 511 Pa. 631, 638 (Pa. 1986) (holding that a single housekeeping unit is one in which a family residential setting is apparent, and excludes arrangements established primarily for profit); Borough of Glassboro v. Vallorosi, 117 N.J. 421, 431 (N.J. 1990) (holding that a group of unrelated persons living together as a single housekeeping unit must exhibit stability, permanency, and a functional lifestyle that is equivalent to a traditional family unit to satisfy a single family zoning regulation); cf. In re Stoddard Site Plan, No 254-12-05, slip op. at 5 (Vt. Envtl. Ct. June 21, 2006) (Wright, J.).

Defendant has not come forward with any evidence suggesting that the persons renting rooms at the house function as a family or a household unit in any way. To the contrary, Defendant does not include any of the occupants of his house at 1166 Main Street as members of his household for tax purposes, even those to whom he is related, instead treating the payments made by them as rental payments, that is, as business income from a rental property.

In any event, when the definition of "rooming and boarding house" is read together with the definition of "family," the ordinance provides sufficient guidance to a decisionmaker to prevent the unfettered exercise of discretion that could lead to discriminatory outcomes. Accordingly, summary judgment is GRANTED to the Town that the definition of rooming and boarding house in the Zoning Bylaws is not unconstitutionally vague.

<u>Whether Defendant is Operating a Rooming and Boarding House</u>

Under the Supreme Court's remand, this Court must determine whether Defendant is operating a rooming and boarding house without a permit in violation of the Zoning Bylaws. Defendant has supplied and charged for sleeping accommodations during the period from mid-June 2008 through July 2009, and from November 2009 through September 2010. What remains after remand is to determine whether the house is "owner-occupied" and whether Defendant has supplied and charged for the sleeping accommodations for a "fixed period of time."

<u>Whether House is Owner-Occupied</u>

The parties agree that Defendant has utilized the house as his primary residence throughout the period at issue in the present case. Def.'s Cross-Mot. for Summ. J. and Opposition to Town's Mot. for Summ. J. at 1–2; Town's Mot. for Summ. J. at 4. Defendant maintains a bedroom for his own exclusive personal use, even when he is not on the premises, and sleeps at the house for more than six months out of each calendar year. Therefore, for the purposes of this analysis the house is owner-occupied.

<u>Fixed Period of Time</u>

Defendant provides sleeping accommodations to the individuals residing at the house in exchange for the monthly payment of rent. Defendant stated at trial, Town's Ex. 2 at 40, lines 16–18, that he and the renters "entered into a contract that did state they're to pay X dollars per month for the use of the rooms." Defendant has charged nine different individuals monthly rental amounts throughout the period at issue in the present case with the exception of a three-month period of August through October of 2009, following the issuance of the original summary judgment decision in 193-8-08 Vtec. See Town's Ex. 1, unnumbered p. 13.

Defendant argues that because there is no written agreement, and because either the defendant or the tenants may terminate the agreement at any time, the tenancy is at will and therefore not for a fixed period of time. However, pursuant to their oral agreements with Defendant, each tenant has agreed to pay Defendant a fixed amount of rent for each month that he remains at Defendant's house. A tenant who wishes to remain an additional month at the house then pays to Defendant an additional month's rent at the agreed-upon rate; Defendant accepts the rent payment if he wishes to keep the particular tenant for an additional month at that rate. This is a rental agreement for a fixed month-to-month term.

This fact is further supported by Defendant's acknowledgment that he cannot terminate the tenancy without complying with the statutory notice requirements. Def.'s Cross-Mot. for Summ. J. and Opposition to Town's Mot. for Summ. J. at 7. Moreover, the fact that Defendant does not always require his tenants to pay the full amount of the rent or allows certain tenants from time to time to pay reduced rent, to skip their rent payments for a month, or to provide maintenance or repair services in lieu of rent, does not change the result. A landlord is not required to initiate eviction proceedings against a tenant for non-payment of rent, and the fact Defendant does not commence eviction proceedings does not change the month-to-month or fixed term of the rental agreements he has with his tenants.

Thus, Defendant is supplying and charging for sleeping accommodations for a fixed month-to-month term in his owner-occupied house at 1166 Main St. This constitutes use as a rooming and boarding house under the Zoning Bylaws. Accordingly, because Defendant has not sought or obtained a zoning permit for the change of use of his house from a single-family dwelling to a rooming and boarding house, summary judgment is hereby GRANTED to the Town that there was a violation.

12

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that summary judgment is GRANTED to the Town and DENIED to Appellant-Defendant as follows, concluding Docket No. 193-8-08 Vtec, and establishing the existence of a violation in Docket No. 274-11-08 Vtec:

1) the Zoning Bylaws are not unconstitutionally vague;

2) Defendant violated the Zoning Bylaws by changing the use of his owner-occupied property at 1166 Main Street from the use category of a single-family residence to the use category of a rooming and boarding house, without first obtaining a zoning permit for the change of use to the rooming and boarding house use, by charging for and supplying nine individuals with sleeping accommodations on a month-to-month basis, that is, for fixed periods of time.

At the December 2010 telephone conference in this matter, the Court postponed deciding whether to order mediation until the question of violation would be resolved. Based on the scheduling sequence agreed by the parties at that telephone conference, a telephone conference now has been scheduled for September 19, 2011 (see enclosed notice), to determine whether now to schedule mediation on the remaining penalty and remedy in this matter, as well as whether any supplementary hearing or briefing is required on the penalty or remedy phase. The Court therefore will suspend entering a judgment order in Docket No. 193-8-08 Vtec to allow mediation, if ordered, to cover both cases.

For the penalty or remedy phase, if the parties wish to rely solely on the materials already submitted to the Court, the Town should be prepared to provide a summary allocation of its costs and expenses (including attorney's fees) so that the Court is able to distinguish between the first period of violation (preparation of the

13

Notice of Violation through July of 2009); the second period of violation (November 2009 through September 2010); the expenses attributable to the Supreme Court appeal, in which Defendant prevailed; and the present proceedings.

Done at Berlin, Vermont, this 2nd day of September, 2011.


_____
Merideth Wright
Environmental Judge